Partial Concurrence and Partial Dissent by Judge BERZON;
Partial Concurrence and Partial Dissent by Judge BYBEE;
Dissent by Judge REINHARDT
OPINION
TALLMAN, Circuit Judge:
OVERVIEW
We took this case en banc to revisit the divisibility of California drug statutes.[1] This case involves California Health and Safety Code section 11352, which—like many California drug statutes—criminalizes a variety of activities related to certain controlled substances identified by reference to other code provisions. If a categorically overbroad statute like section 11352 is divisible, then it is subject' to the modified categorical approach, and a prior state conviction under that statute might constitute a predicate “drug trafficking offense” under the federal sentencing guidelines. We clarify the analysis to be employed in light of the most recent guidance from the United States Supreme Court.
Melvin Martinez-Lopez was convicted of illegal reentry following deportation in violation of 8 U.S.C. § 1326. The district court assumed that section 11352 is divisible based on our prior decisions, and concluded that Martinez-Lopez’s prior conviction under section 11352 qualifies as a federal drug trafficking offense under the modified categorical approach. It therefore imposed a 16-level enhancement to his base offense level and sentenced him to 77 months in prison.
*1037 On appeal, Martinez-Lopez argues that section 11352 is indivisible with regard to both its controlled substance requirement and its actus reus requirement. We disagree, and conclude that both requirements are elements under Mathis, thus rendering section 11352 divisible and subject to the modified categorical approach. Because MartinezrLopez previously pled guilty to selling cocaine, which qualifies as a drug trafficking offense under the guidelines, and because his sentence is substantively reasonable, we affirm.
I. BACKGROUND
As a child, Miguel Angel Rodriguez— known in this case as Melvin Martinez-Lopez—ran away from his family in Guatemala to escape physical abuse by his alcoholic father. He entered the United States illegally when he was 12 years old and moved in with his aunt in Los Angeles County. Later, he began living on the streets and in shelters. He eventually became involved with a local street gang and started selling drugs.
. Martinez-Lopez was convicted in California state court of selling cocaine in 1993, and again in 1994. He was deported upon release from his 1994 prison sentence, but he promptly returned to the United States. In January 1998, Martinez-Lopez was again convicted for selling cocaine after he pled guilty to violating California Health arid Safety Code section 11352(a), which makes it a crime to transport, import, sell, furnish, administer, give away; or offer to transport, import, sell, furnish, administer, or give away “ariy controlled substance specified” in a number of cross-referenced code provisions. Martinez-Lopez served time in state prison and was again deported upon release in 2001.
Martinez-Lopez continued his recidivist pattern of returning to the United States after deportation—in part to be with his children and their mother, whom he considers to be his wife. In 2003, he was convicted of illegal reentry, sentenced to 21 months in federal prison, and deported upon release. In 2006, he was again convicted of illegal reentry, sentenced' to 77 months in prison, and deported upon release. Finally, in 2014, he was once again convicted of illegal reentry and is now serving another 77-month sentence.
This final sentence is at issue before us. The district court based the current 77-month sentence on a guidelines sentencing range of 70 to 87 months, which was itself driven by the 16-level enhancement. This enhancement is imposed under the federal sentencing guidelines when a defendant was previously deported following a conviction “for a felony .., drug trafficking offense for which thé sentence imposed exceeded 13 months.” U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2L1.2(b)(1)(A)(i) (U.S. Sentencing Comm’n 2012).[2] To qualify as a drug trafficking offense under the guidelines, the offense must involve a substance listed in the. Controlled Substances Act, 21 U.S.C. § 801 et seq., see United States u Leal-Vega, 680 F.3d 1160, 1167 (9th Cir. 2012), and involve the violation of a law which “prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense.” U.S.S.G. § 2L1.2 cmt. n.1(B)(iv).
The district court recognized that a conviction under California’s section 11352 does not categorically qualify as a drug *1038 trafficking offense because section 11852 criminalizes a broader range of activity and a greater variety of controlled substances than does federal law. See Mielewczyk v. Holder, 575 F.3d 992, 995 (9th Cir. 2009) (section 11352 categorically over-broad with regard to its controlled substance requirement); United States v. Rivera-Sanchez, 247 F.3d 905, 909 (9th Cir. 2001) (en banc) (section 11352 categorically overbroad with regard to its actus reus requirement), superseded on other grounds by U.S.S.G. § 2L1.2 cmt. n.4 (2002).[3] However, the district court went on to determine that the prior conviction nonetheless qualified as a drug trafficking offense under the modified categorical approach—relying on our prior determination that section 11352 is a divisible statute. See Huitron-Rocha, 771 F.3d at 1184. Because a California Superior Court plea colloquy shows that Martinez-Lopez pled guilty to selling cocaine, the district court concluded that the section 11352 conviction qualified as a predicate drug trafficking offense. It therefore applied the 16-level enhancement, which resulted in a guidelines range of 70 to 87 and a sentence of 77 months in prison.
Martinez-Lopez raises three arguments on appeal. First, he argues that his 1998 conviction cannot qualify as a predicate drug trafficking offense because section 11352 is indivisible with regard to its controlled substance requirement. Second, he argues that section 11352 is indivisible with regard to its actus reus requirement. Third, he argues that his sentence is substantively unreasonable. We reject each in turn.
II. DISCUSSION
We apply a three-step analysis to determine whether a prior conviction under state law qualifies as a predicate drug trafficking offense under the federal sentencing guidelines. First, we ask whether the state law is a categorical match with a federal drug trafficking offense. See Taylor v. United States, 495 U.S. 575, 599-600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). At this step, we look only to the “statutory definitions” of the corresponding offenses. Id. at 600, 110 S.Ct. 2143. If a state law “proscribes the same amount of or less conduct than” that qualifying as a federal drug trafficking offense, then the two offenses are a categorical match. United States v. Hernandez, 769 F.3d 1059, 1062 (9th Cir. 2014) (per curiam). In that scenario, a conviction under state law automatically qualifies as a predicate drug trafficking offense—ending our analysis. See Taylor, 495 U.S. at 599, 110 S.Ct. 2143.
We have already held that section 11352, like many California drug statutes, is not a categorical match with a federal drug trafficking offense. See Mielewczyk, 575 F.3d at 995 (controlled substance requirement); Rivera-Sanchez, 247 F.3d at 909 (actus reus requirement). This case, therefore, turns on the second step of our analysis.
At the second step, we ask whether section 11352 is a divisible statute which “sets out one or more elements of the offense in the alternative.” Descamps v. United States, — U.S. —, 133 S.Ct. 2276, 2281, 186 L.Ed.2d 438 (2013). In Mathis, the Supreme Court reiterated the importance of the abstract comparison of elements, *1039 explaining that a statute is divisible only when it “list[s] elements in the alternative, and thereby define[s] multiple crimes.” 136 S.Ct. at 2249. Mathis did not change the rule stated in Descamps; it only reiterated that the Supreme Court meant what it said when it instructed courts to compare elements.
However, Mathis also instructed courts not to assume that a statute lists alternative elements and defines multiple crimes simply because it contains a disjunctive list. Id. Although we properly articulated the elements-based test before Mathis was decided, see Rendon v. Holder, 764 F.3d 1077, 1086 (9th Cir. 2014), our prior decisions on California drug statutes have often put undue emphasis on the disjunctive-list rationale criticized in Mathis. See, e.g., Huitron-Rocha, 771 F.3d at 1184 (relying on Coronado to find section 11362 divisible); Torre-Jimenez, 771 F.3d at 1166-67 (relying on Coronado to find Section 11351 divisible); Coronado, 759 F.3d at 984 (“[B]y its very terms, § 11377(a) list[s] potential offense elements in the alternative.... Use of the modified categorical approach is therefore appropriate.... ” (citation and quotation marks omitted)); see also Guevara, 136 S.Ct. at 2542 (vacating decision relying on Torre-Jimenez and remanding for reconsideration in light of Mathis).
Instead, Mathis instructs us to consult “authoritative sources of state law” to determine whether a statute contains alternative elements defining multiple crimes or alternative means by which a defendant might commit the same crime. Mathis, 136 S.Ct. at 2256. The Court begins by describing two “easy” scenarios, which occur when (1) a state court decision “definitively answers the question,” or (2) the statute “on its face ... resolve[s] the issue.” Id. The Court then explains that “if state law fails to provide clear answers,” we should “peek at the record documents ... for the sole and limited purpose of determining whether the listed items are elements of the offense” under state law. Id. at 2256-57 (alterations and quotation marks omitted) (quoting Rendon v. Holder, 782 F.3d 466, 473-74 (9th Cir.2015) (Kozinski, J., dissenting from denial of reh’g en banc)). Finally, the Court observes that in most cases we will be able to determine whether a law is divisible or indivisible. Id. at 2257 (“[indeterminacy should prove more the exception than the rule.”).
If section 11352 is divisible under Mathis, then we may proceed to the third step in our analysis and apply the modified categorical approach. At this step, we examine judicially noticeable documents of conviction “to determine which statutory phrase was the basis for the conviction.” Descamps, 133 S.Ct. at 2285 (quoting Johnson v. United States, 559 U.S. 133, 144, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010)). If the defendant pled or was found guilty of the elements constituting a federal drug trafficking offense, the prior state conviction may serve as a predicate offense under the sentencing guidelines. See Shepard v. United States, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).
It bears repeating that we may apply the modified categorical approach only when we first determine that a statute is divisible—if a statute is both overbroad and indivisible, a prior conviction under that statute will never qualify as a predicate drug trafficking offense under the federal sentencing guidelines. For this reason, Martinez-Lopez’s case turns on the divisibility of section 11352.
A. Controlled Substance Requirement
Martinez-Lopez first argues that his prior conviction cannot qualify as a predicate offense because section 11352 is indivisible with regard to its controlled substance requirement. We review divisibility of a statute de novo, Almanza-Are *1040 nas v. Lynch, 815 F.3d 469, 477 (9th Cir. 2016) (en banc), and we disagree.
With respect to the controlled substance requirement, we conclude that this is an “easy” case because a “state court decision definitively answers the question.” Mathis, 136 S.Ct. at 2256. In 1975, the California Supreme Court decided In re Adams, 14 Cal.3d 629, 122 Cal.Rptr. 73, 536 P.2d 473 (1975). Adams addressed section 654 of thé California Penal Code, which prohibits multiple sentences for a single “act ror omission that is punishable in different ways by different provisions of law.” Cal. Penal Code § 654. Adams held that, under section 654, a defendant cannot receive multiple sentences for the simultaneous transportation of different types of drugs when the defendant transports the different drugs with a single criminal objective. 122 Cal.Rptr. 73, 536 P.2d at 476-77. But Adams cautioned that it “d[id] not disapprove” of earlier cases imposing multiple sentencés for simultaneous possession' of different drugs. Id., 122 Cal.Rptr. 73, 536 P.2d at 477 (citing, e.g., People v. Lockwood, 253 Cal.App.2d 75, 61 Cal.Rptr. 131 (1967); People v. Lopez, 169 Cal.App.2d 344, 337 P.2d 570 (1959)). Instead, Adams distinguished those cases, explaining that multiple .sentences are proper so long as the defendant has multiple criminal objectives—for example, when a defendant intends to sell to multiple buyers». Id.
Moreover, Adams implicitly approved of multiple convictions even when a defendant has a single criminal objective because Adams modified only the criminal judgment by staying execution of the multiple sentences, leaving intact the separate convictions. Id., 122 Cal.Rptr. 73, 536 P.2d at 479. The California Supreme Court has reaffirmed these principles as recently as 2012. See People v. Jones, 54 Cal.4th 350, 142 Cal.Rptr 3d 561, 278 P.3d 821, 827 (2012), (finding violation of section 654 but reiterating that the court “do[es] not intend to cast' doubt on the cases” holding that “ ‘simultaneous possession of different items of contraband’ are separate” crimes (citation omitted)).
As a result of Adams and its progeny, defendants are routinely subjected to multiple convictions under a single statute for a single act as it relates to multiple con-" trolled substances. See, e.g., People v. Monarrez, 66 Cal.App.4th 710, 78 Cal.Rptr.2d 247, 248 (1998) (finding no violation of section 654 and affirming separate sentences for simultaneous possession'of heroin and cocaine for sale in violation of section 11351). Section 11352 is no exception to this prosecutorial charging practice. See, e.g., Adams, 122 Cal.Rptr. 73, 536 P.2d at 475-77 (finding violation bf section 654 but otherwise approving of multiple convictions for simultaneous transportation of heroin and pantopon in violation of section 11352); People v. Chung, 237 Cal.App.4th 462, 187 Cal.Rptr.3d 873, 878-80 (2015) (same with regard to simultaneous offers to sell cocaine and cocaine base).
Because defendants are routinely subjected to such convictions, and because such, convictions are recognized as separate crimes by the California Supreme Court, we have a “definitive[ ] answer[ ]”: the controlled substance requirement in section 11352 does not simply describe “alternative methods of committing one offense.” Mathis, 136 S.Ct. at 2256 (citation, alterations, and quotation marks omitted in second quotation). Rather, because “the possession of one [substance] is not essential to the possession of another [substance],” In re Hayes, 70 Cal.2d 604, 75 Cal.Rptr. 790, 451 P.2d 430, 436 (1969) (Traynor, C.J., dissenting), overruled on other grounds by Jones, 142 Cal.Rptr.3d 561, 278 P.3d at 826-27, section 11352 creates separates, crimes, each containing “an element not contained in the other,” United States v. Ford, 371 F.3d 550, 553 (9th *1041 Cir. 2004) (emphasis added) (quoting United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), which describes the test for double jeopardy). Thus, section 11352 is divisible with regard to its controlled substance requirement;
Although we,.need look no further because the California Supreme Court has spoken on the issue, see Mathis, 136 S.Ct. at 2256, our conclusion is also supported by persuasive authority on California law. For example, California jury instructions require a jury to fill in a blank identifying “a controlled substance”—i.e., only one-demonstrating that the jury must identify and unanimously agree on a particular controlled substance. Judicial Council of California Criminal. Jury Instructions (CALCRIM) 2301; see also United States v. Vidal, 504 F.3d 1072, 1084 n.20 (9th Cir. 2007) (en banc) (noting that the California Criminal Jury Instructions “are the official instructions "for use in the state of California” (quoting Cal. Rules of Court 2.1050)). Additionally, a leading commentator on California law describes “[a] specified controlled substance” as an element common to all criminal drug offenses. 2 Witkin, Cal. Crim. Law § 102(1)(a) (4th ed. 2012).
We see no need to belabor the point by responding to Martihez-Lopez’s arguments regarding decisions by California appellate courts. Because the California Supreme Court recognizes multiple section 11352 convictions for a single, act as it relates to multiple controlled substances, see Jones, 142 Cal.Rptr.3d 561, 278 P.3d at 827; Adams, 122 Cal.Rptr. 73, 536 P.2d at 477, it has implicitly held that , the controlled substance requirement is an element. As the final expositor of California law, we find its reasoning persuasive and conclude that section 11352 is divisible with regard to its controlled substance requirement.
B. Actus Reus Requirement
Martinez-Lopez next argues that his pri- or conviction cannot qualify as a predicate offense under the federal sentencing guidelines because section 11352 is indivisible with regard to its actus reus- requirement. We disagree and conclude that Martinez-Lopez’s argument is foreclosed • by another controlling state decision.
In People v. Patterson, 49 Cal.3d 615, 262 Cal.Rptr. 195, 778 P.2d 549 (1989), the California Supreme Court considered application of the felony-murder doctrine to convictions under section 11352. Patterson first explained that, under the felony-murder doctrine, courts must evaluate the inherent dangerousness of a crime based on “the elements of the felony in the abstract,” and not based on the “particular facts of the case.” Id., 262 Cal.Rptr. 195, 778 P.2d at 554 (citation and internal quotation marks omitted in second quotation). It then reversed the decision below, which concluded that “a violation of section 11352” is not inherently dangerous, id., 262 Cal.Rptr. 195, 778 P.2d at 553, and held that the proper inquiry is instead whether “the specific offense of furnishing cocaine” is inherently dangerous, id., 262 Cal.Rptr. 195, 778 P.2d at 555, The court went on to explain that:
To create statutes separately proscribing the importation, sale, furnishing, administration, etc., of each of these drugs, would require the enactment of hundreds of individual statutes. It thus appears that for the sake of convenience the Legislature has included the various offenses in one statute.
Id., 262 Cal.Rptr. 195, 778 P.2d at 556. In this way, Patterson unequivocally held that section 11352 “creat[es] ... separate crimes” based on alternative actus rei elements, and does not merely describe “alternative ways of satisfying a single [actus reus] element.” Mathis, 136 S.Ct. at 2250.
*1042 Martinez-Lopez insists that Patterson has nothing to do with Mathis’s distinction between elements and means because it does not discuss what “the prosecution must prove” and what must be “found by a jury []or admitted by a defendant.” 136 S.Ct. at 2249 (citation and quotation mark omitted). It is true that Patterson did not describe its decision in these terms. However, Patterson did describe its method as an abstract comparison of “elements,” 262 Cal.Rptr. 195, 778 P.2d at 553, which are— by definition—what the “prosecution must prove to sustain a conviction,” Mathis, 136 S.Ct. at 2248 (quoting Black’s Law Dictionary 634 (10th ed. 2014)). We will not assume that the California Supreme Court failed to recognize the significance of this term, or that it did not actually mean “elements” when it purported to compare “elements.” Cf. Mathis, 136 S.Ct. at 2254 (“[A] good rule of thumb for reading ... decisions is that what they say and what they mean are one and the same.... ”).
Such an assumption is especially unfounded in light of the California Supreme Court’s continued reliance on Patterson and its elements-based rationale. See, e.g., People v. Mason, 62 Cal.3d 909, 277 Cal.Rptr. 166, 802 P.2d 950, 977 (1991) (citing Patterson and explaining that “[wjhether a felony is inherently dangerous for purposes of the second degree felony-murder rule is determined by viewing the elements of the felony in the abstract” (emphasis added) (citations omitted)); People v. Howard, 34 Cal.4th 1129, 23 Cal.Rptr.3d 306, 104 P.3d 107, 111 (2005) (same). Moreover, it is hard to see how Patterson is inappo-site when it expressly rejects Martinez-Lopez’s theory, then advanced by Justice Stanley Mosk, that “[sjection 11352 in effect prohibits different ways [or means] of engaging in the same targeted criminal conduct—trafficking in illegal narcotics.” 262 Cal.Rptr. 195, 778 P.2d at 565 (Mosk, J., dissenting).
Nor is our conclusion swayed by the decisions cited by Martinez-Lopez. Many of these decisions do not actually conflict with our reading of Patterson. For example, People v. Guiton affirmed a conviction for “selling or transporting” cocaine. 4 Cal.4th 1116, 17 Cal.Rptr.2d 365, 847 P.2d 45, 46 (1993). Martinez-Lopez argues that this combined conviction proves that the actus reus requirement is not an element. But Guitón expressly recognized that the jury “had to agree that the defendant committed the same act.” Id., 17 Cal.Rptr.2d 365, 847 P.2d at 51. Guiton thus rests on principles of harmless error, and does not conflict with our reading of Patterson. See Guiton, 17 Cal.Rptr.2d 365, 847 P.2d at 54 (concluding that there was no “reasonable probability that the jury found the defendant guilty solely on the [unsupported] sale theory”); see also People v. Mil, 53 Cal.4th 400, 135 Cal.Rptr.3d 339, 266 P.3d 1030, 1039 (2012) (“[T]he omission of one or more elements of a charged offense ... is amenable to review for harmless error .... ”). We come to the same conclusion with regard to People v. Cornejo, 92 Cal.App.3d 637, 155 Cal.Rptr. 238 (1979), which notes that a defendant violates section 11352 whether he sells or gives away heroin, id. at 250.
Finally, to the extent that the cited decisions do conflict with Patterson, we find them unpersuasive. Many of these decisions are unpublished, and we will not rely on them. See Cal. Rules of Court 8.1115. Others predate, and have been overruled to the extent that they conflict with, Patterson. See Patterson, 262 Cal.Rptr. 195, 778 P.2d at 566 (Mosk, J., dissenting) (citing Cornejo, 155 Cal.Rptr. at 250; People v. Pierre, 176 Cal.App.2d 198, 1 Cal.Rptr. 223, 226 (1959)). The remaining cases were decided by California Courts of Appeal. Because the California Supreme Court has the final say, we reject these decisions as *1043 erroneous to the extent that they conflict with Patterson.[4]
We hold that the actus reus requirement is an element under Mathis because the California Supreme Court examined the elements of section 11352 in the abstract and concluded that the statute separately defines “a variety of offenses” including the “importation, sale, furnishing, administration, etc., of each of [the listed] drugs.” Patterson, 262 Cal.Rptr. 195, 778 P.2d at 556. Section 11352 is therefore divisible with regard to its actus reus requirement.[5]
C. Application of the Modified Categorical Approach
Because section 11352 is divisible with regard to both its controlled substance requirement and its actus reus requirement, we proceed to the third step in our analysis and apply the modified categorical approach. Under this approach, we look beyond the statutory text to a limited set of documents “to determine which statutory phrase was the basis for the conviction.” Descamps, 133 S.Ct. at 2285 (citation omitted). These documents include “the terms of a plea agreement or transcript of colloquy ... in which the factual basis for the plea was confirmed by the defendant.” Shepard, 544 U.S. at 26, 125 S.Ct. 1254.
In this case, the district court properly examined the plea colloquy in which Martinez-Lopez was asked, “[0]n or about December 31st, 1997, [did] you ... sell cocaine base—.42 grams of cocaine base?” He responded, ‘Tes.” Based on this exchange, we can say—with the certainty that Taylor demands—that Martinez-Lopez’s 1998 conviction under section 11352 was for selling cocaine. Mathis, 136 S.Ct. at 2257. Because this constitutes a drug trafficking offense under the federal sentencing guidelines, the district court correctly imposed a 16-level enhancement to the base offense level for illegal reentry and correctly calculated a guidelines sentencing range of 70 to 87 months.
D. Substantive Reasonableness
Finally, we reject Martinez-Lopez’s argument that his within-range 77-month sentence is substantively unreasonable for a third identical conviction. We afford significant deference to a district court’s sentence under 18 U.S.C. § 3553 and reverse only if the court applied an incorrect legal rule or if the sentence was “illogical, implausible, or without support in inferences that may be drawn from the facts in the record.” United States v. *1044 Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).
Martinez-Lopez argues that his 77-month sentence is substantively unreasonable because his illegal reentry offense and his underlying drug offense were nonviolent, because he had a troubled childhood, and because he is trying to establish a family in the United States. He also argues that the 16-level enhancement led to an “artificially ... inflated” sentence.
Because we conclude that section 11352 is divisible and the 16-level enhancement was proper, Martinez-Lopez’s sentence is not artificially inflated. Moreover, although a district court is not required to give a lengthy explanation for its within-guidelines sentence, Rita v. United States, 551 U.S. 338, 356-57, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), the record shows that the district court carefully weighed the facts now argued again on appeal. It acknowledged that the prior offenses “did not involve any violence, and [that] the Defendant is .,. trying to finally have a family,” but found these facts insufficient to warrant a below-guidelines sentence. Instead, the court noted the obvious need for deterrence in light of Martinez-Lopez’s recidivism and concluded that “the same length as the last time [would be] sufficient for that.”
Finally, although Martinez-Lopez relies on United States v. Amezcua-Vasquez, 567 F.3d 1050 (9th Cir. 2009), that case is easily distinguished. In Amezcua-Vasquez, we concluded that a sentence was substantively unreasonable when a defendant received a 16-level enhancement based on a single conviction that occurred 20 years prior. Id, at 1056, 1058. But in this case, Martinez-Lopez has a lengthy criminal record and has received multiple convictions including for illegal reentry in 2003 and in 2006; and for possession of heroin in 2012. In sum, Amezcua-Vasquez is simply a different case from this recidivist offender.
Because a judge is not “required to sentence at a variance with” the sentencing guidelines, United States v. Mitchell, 624 F.3d 1023, 1030 (9th Cir. 2010) (quoting United States v. Corner, 598 F.3d 411, 416 (7th Cir. 2010)), and because the sentence based on this record is not “illogical, implausible, or without support,” Hinkson, 585 F.3d at 1263, we affirm Martinez-Lopez’s 77-month sentence as substantively reasonable.
III. CONCLUSION
Section 11352 is divisible with regard to both its controlled substance requirement and its actus reus requirement. For this reason, the district court properly applied the modified categorical approach and correctly found that Martinez-Lopez pled guilty to selling cocaine, which qualifies as a drug trafficking offense under the federal sentencing guidelines and subjects Martinez-Lopez to a 16-level enhancement to his base offense level. Finally, the 77-month sentence, based on a properly calculated guidelines range of 70 to 87 months, is substantively reasonable.
AFFIRMED.

. In Guevara v. United States, — U.S. —, 136 S.Ct. 2542, 195 L.Ed.2d 866 (2016), the Supreme Court granted certiorari, vacated our, decision finding California Health, and Safety Code section 11351 divisible, and remanded with instructions to reconsider in light of Mathis v. United States, — U.S. —, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016). Because Guevara was based on related decisions involving similar California drug statutes, see, e.g., Coronado v. Holder, 759 F.3d 977 (9th Cir. 2014); United States v. Huitron-Rocha, 771 F.3d 1183 (9th Cir. 2014); United States v. Torre-Jimenez, 771 F.3d 1163 (9th Cir. 2014), we respond to the Supreme Court’s instruction by revisiting the entire line of cases.

. Martinez-Lopez was sentenced under the November 12, 2012, edition of the federal sentencing guidelines, which have been revised on multiple occasions in subsequent years.

. Section 11352 is categorically overbroad with regard to its actus reus requirement because it criminalizes the mere "offer to” commit certain offenses related to a controlled substance. Rivera-Sanchez, 247 F.3d at 908-09. The version of section 11352 in effect at the time of Martinez-Lopez’s conviction was also categorically overbroad because it criminalized the transportation of a controlled substance for personal use, which is not a drug trafficking offense under the Controlled Substances Act. See United States v. Rosales-Aguilar, 818 F.3d 965, 973 (9th Cir. 2016).

. Although our colleague Judge Berzon suggests that we are presumptuous "to deem these state court decisions incorrect as to state law,” see Dissenting & Concurring Op. 1050, we reiterate that most of these decisions can be explained by a finding of harmless error, see Mil, 135 Cal.Rptr.3d 339, 266 P.3d at 1039, and the degree of conflict is likely minor.

. The partial concurrence suggests that our reading of Patterson is in tension with People v. Vidana, 1 Cal.5th 632, 206 Cal.Rptr.3d 556, 377 P.3d 805 (2016). We disagree. In Vidana, the California Supreme Court held that a defendant cannot be subjected to multiple convictions for the same offense based on "alternate legal theories.” Id., 206 Cal.Rptr.3d 556, 377 P.3d at 817. It observed that, to determine whether two offenses are the same, a court must ask whether the "[ljegislature meant to define only one [or multiple] offense[s].” Id., 206 Cal.Rptr.3d 556, 377 P.3d at 808. In Vidana, the court explained that the legislature had taken larceny and embezzlement, which were previously treated as separate offenses, and “consolidated [them] into the single offense of theft” via a number of additions and amendments to the California Penal Code. Id., 206 Cal.Rptr.3d 556, 377 P.3d at 808. The legislature has made no such amendments here, and Vidana does not otherwise suggest that the California Supreme Court will revisit its conclusion that the legislature defined "a variety of offenses” in section 11352. Patterson, 262 Cal.Rptr. 195, 778 P.2d at 556.