**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee*,

              v.

LUIS OCAMPO-ESTRADA, AKA Luis
Enrique Ocampo,
                    *Defendant-Appellant.*

No. 15-50471

D.C. No.
3:12-cr-3850-
JAH-2

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge Presiding

Argued and Submitted April 4, 2017
Pasadena, California

Filed August 29, 2017

Before: David M. Ebel,[*] Milan D. Smith, Jr.,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Ebel

---

[*] The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction for conspiracy to distribute methamphetamine, vacated the sentence, and remanded for resentencing.

The panel held that the district court did not abuse its discretion in denying the defendant's requested theory-of-defense jury instruction on the buyer-seller exception to conspiracy liability.

The panel held that California Health & Safety Code § 11378 is a divisible statute that is susceptible to the modified categorical approach. The panel held that using the modified categorical approach, the government failed to demonstrate that the defendant's § 11378 conviction was based on a guilty plea to a controlled-substance element that is included within the "felony drug offense" definition set forth in 21 U.S.C. § 802(44). The panel therefore concluded that the defendant's prior conviction does not qualify as a felony drug offense that would enhance his statutory mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A).

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Devin Burstein (argued), Warren & Burstein, San Diego, California, for Defendant-Appellant.

Daniel Earl Zipp (argued), Assistant United States Attorney; Helen H. Hong, Chief, Appellate Section; Criminal Division, United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

**OPINION**

EBEL, Circuit Judge:

Defendant Luis Ocampo-Estrada (Ocampo) was convicted of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court then determined that Ocampo had previously been convicted of a state offense, which qualified as a "felony drug offense" under 21 U.S.C. § 841(b)(1)(A), thereby triggering a twenty-year mandatory minimum sentence. The predicate offense was California Health & Safety Code section 11378, which prohibits the possession of certain controlled substances for sale.

Ocampo appeals both his federal conviction and sentence. Because the district court did not abuse its discretion in denying Ocampo's requested jury instruction, his conviction is AFFIRMED. The sentence however does not survive. We hold that California Health & Safety Code section 11378 is a divisible statute that is susceptible to the modified categorical approach. However, using the modified categorical approach, the government failed to prove that Ocampo had pleaded guilty to violating a

controlled-substance element under section 11378 that is encompassed by the federal definition for "felony drug offense," 21 U.S.C. § 802(44). Accordingly, his sentence is VACATED and the matter is REMANDED to the district court for resentencing.

## I. BACKGROUND

For almost a year, Ocampo would regularly supply methamphetamine to Norman Nooris who, in turn, would distribute it to buyers. Homeland Security Investigations (HSI) first observed this supplier-dealer relationship on October 18, 2011, when Nooris told undercover agents he needed to "reload his supply." ER 351. A short time later, Ocampo arrived driving a black SUV and handed Nooris some methamphetamine, which Nooris then sold to the undercover agents.

On October 25, 2011, the same agents arranged for another drug purchase from Nooris. Nooris asked Ocampo to "front[]" him the methamphetamine, i.e., to require payment only after the sale was complete. ER 148–49. Ocampo agreed to front Nooris the drugs, drove him to the parking lot where the sale was to take place, and then he waited in the car while Nooris sold an ounce of methamphetamine to the undercover agents. After the sale was completed, Nooris rejoined Ocampo in the car, and the two drove off.

After these two arranged purchases, HSI officers obtained authorization to monitor cell-phone conversations between Nooris and Ocampo. On December 6, 2011, Nooris told Ocampo that Nooris had customers waiting and asked when Ocampo would have the drugs. Ocampo updated him on the forthcoming supply, explaining it would be available

in a few hours after his courier delivered it from across the Mexican border.

The next day, Ocampo informed Nooris that he had "two bomb ones" available, ER 119, and Nooris asked again if Ocampo could front him the drugs. Ocampo agreed and provided the methamphetamine on credit. Later that day, Nooris called to give Ocampo an update on the sale, explaining that his customer "only wanted a half." ER 129.

A few weeks later, agents intercepted another series of calls in which Ocampo and Nooris arranged for more drug sales. On December 26, 2011, Nooris asked if Ocampo could deliver the drugs immediately in order to satisfy one of Nooris's buyers, "the white dude." ER 636. Ocampo responded that he would come immediately. A few days after that, Nooris asked Ocampo to bring more methamphetamine so that Nooris could sell it while Ocampo waited in the car. That same night, Ocampo and Nooris met again for another resupply.

On January 19, 2012, Nooris arranged to sell some of Ocampo's supply on consignment, i.e., on credit, offering assurance that Ocampo would receive payment as soon as the methamphetamine could be sold that evening. Nooris kept Ocampo apprised of the status of the sales during that night. The next day, Nooris called again for a resupply, commenting that he had most of the money needed to pay down his "tab" with Ocampo. ER 158, 711. Nooris said one of his customers "wanted to get somethin kinda big," ER 717, and so Ocampo agreed to the resupply.

The frequency and duration of the dealings were substantial. Over the course of this relationship, Ocampo was Nooris's "most consistent source" of methamphetamine, and Nooris obtained the drugs from

Ocampo for "almost a year." ER 82, 197. Sometimes, the two would meet "two or three times a day." ER 142.

On January 22, 2012, Nooris was pulled over for speeding and, after officers searched his car and discovered methamphetamine, they arrested him. While in custody at the county jail, Nooris spoke with Ocampo on a recorded jail call. In that call, Ocampo asked permission to sell the drugs to Nooris's customers while Nooris was incarcerated. Nooris agreed and gave Ocampo advice on how to find these customers, what to watch out for, and how much to sell. Eventually federal agents arrested Ocampo on October 19, 2012, and the United States charged both Nooris and Ocampo with conspiracy to distribute methamphetamine under 21 U.S.C. §§ 841 and 846.

Nooris pleaded guilty, but Ocampo went to trial. After the jury convicted Ocampo, the district court applied a twenty-year mandatory minimum sentence based on a determination that Ocampo's prior California conviction qualified as a felony drug offense under 21 U.S.C. § 841(b)(1)(A). Ocampo now appeals his conviction and sentence.

## II. DISCUSSION

### A. *The Evidence was Insufficient to Support a Buyer-Seller Instruction*

We begin with Ocampo's conviction. Before closing argument, Ocampo requested a theory-of-defense jury instruction on the buyer-seller exception to conspiracy liability. That exception provides that a mere sales transaction does not constitute an "agreement" sufficient to support a conspiracy conviction—there must be proof of some further agreement to commit a crime other than the sale

itself, i.e., "to further distribute the drug in question." *E.g., United States v. Moe*, 781 F.3d 1120, 1124–25 (9th Cir. 2015). The district court found insufficient evidence to warrant the instruction and denied it. We review that decision for abuse of discretion. *United States v. Bello-Bahena*, 411 F.3d 1083, 1089 (9th Cir. 2005).

"A criminal defendant has a constitutional right to have the jury instructed according to h[is] theory of the case, provided that the requested instruction is supported by law and *has some foundation in evidence.*" *Moe*, 781 F.3d at 1127 (emphasis added). The question is whether "there is evidence upon which the jury could rationally sustain the defense." *United States v. Jackson*, 726 F.2d 1466, 1468 (9th Cir. 1984); *accord Moe*, 781 F.3d at 1128.

We hold that the district court did not abuse its discretion in denying Ocampo's requested buyer-seller instruction because the evidence established at trial was not sufficient to sustain that theory of defense. Ocampo was Nooris's most consistent source for drugs and the relationship persisted for almost a year, with distributions to Nooris occurring frequently. Moreover, the majority of Ocampo's sales to Nooris were made on some form of credit, and involved amounts given to Nooris that exceeded the amount typical for personal use. Ocampo knew that Nooris was dividing up the drugs for resale, and the two of them advised each other on the conduct of their respective roles in the business. The force of the government's evidence, coupled with the lack of contradictory evidence, compel our conclusion that the district court did not abuse its discretion in declining the requested buyer-seller instruction.

We now turn to the sentence of imprisonment.

B. *Failure to Show Prior Conviction Qualifies as Felony Drug Offense*

### 1. *Sentencing Proceedings*

Before trial, the government filed an Information under 21 U.S.C. § 851 notifying Ocampo that it would enhance his statutory mandatory minimum sentence to twenty years based on Ocampo's prior felony drug conviction under California law.  The enhancement was to be based on Ocampo's September 9, 1998 conviction under California Health & Safety Code section 11378, which criminalizes the possession of certain controlled substances for sale.  The United States took the position that this conviction qualified as a "felony drug offense" under 21 U.S.C. § 841(b)(1)(A). The term "felony drug offense" is defined in 21 U.S.C. § 802(44) as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country *that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.*" (emphasis added.)  To support its burden, the government introduced the state-court minutes from the pronouncement of judgment, and the abstract of judgment of the state proceeding.  While these materials clearly show Ocampo pleaded guilty to California Health & Safety Code section 11378, they do not describe *which* controlled substance under California law Ocampo pleaded guilty to possessing for sale.

Ocampo attacked the proposed federal sentence enhancement on several grounds, but he did *not* challenge it on the basis that his prior conviction failed to qualify as a felony drug offense.  However, neither did the district court advise him that he was required to make timely challenges to the proposed enhancement in order to avoid a statutory

waiver under 21 U.S.C. § 851(c)(2) ("Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived . . . .").

After the trial, when it came time for sentencing, Ocampo made several objections to the presentence report, which had concluded that Ocampo's criminal behavior was escalating.  He countered by stating that his prior California state conviction only "involve[d] 57 grams of Methamphetamine."  ER 779.[1]  Again, however, he did not object that his prior California conviction did not qualify as a felony drug offense.

Because the argument was not raised, the district court did not analyze whether Ocampo's prior conviction qualified as a felony drug offense.  Thus, without discussion of that issue, the district court proceeded to impose the twenty-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A).  Ocampo now argues on appeal for the first time that his California section 11378 conviction does not qualify as a felony drug offense.[2]

---

[1] The federal definition of "felony drug offense" encompasses methamphetamine.  *See* 21 U.S.C. § 802(44) (defining felony drug offense to include "depressant or stimulant substances," which is further defined by § 802(9)(B) to include amphetamines); *see also United States v. Mincoff*, 574 F.3d 1186, 1201 (9th Cir. 2009).  But as explained below, we do not rely on this statement in Ocampo's objections to the instant federal presentence report to conclude that Ocampo necessarily pleaded guilty in the state prosecution to possession of methamphetamine for sale.

[2] Ocampo also argues that the definition of felony drug offense in 21 U.S.C. § 802(44) is unconstitutionally vague on its face, but we do not reach that question because it does not affect the result.

### 2. *Ocampo Did Not Waive This Challenge*

The United States contends that Ocampo waived this challenge by failing to raise it before the district court as required by 21 U.S.C. § 851(c)(2). That statute sets forth the procedures for establishing prior convictions for the purpose of sentencing enhancements. Preliminarily, before trial or entry of a guilty plea, the United States must file an Information identifying "the previous conviction[] to be relied upon" to enhance the defendant's sentence. *Id.* § 851(a)(1).

Then after conviction but before imposing the sentence, the district court "shall . . . inquire of the [offender] . . . whether he affirms or denies [the prior conviction] . . . , and *shall inform him* that any challenge to a prior conviction" is waived if not made before sentencing. *Id.* § 851(b) (emphasis added). "We require strict compliance with the procedural aspects of section 851(b). The § 851(b) colloquy is not merely a procedural requirement. It serves a functional purpose to place the procedural onus on the district court to ensure defendants are fully aware of their rights." *United States v. Rodriguez*, 851 F.3d 931, 946 (9th Cir. 2017) (internal quotation marks and citation omitted).

The problem here is that the district court never asked Ocampo whether he affirmed or denied the 1998 conviction as alleged, nor did the court advise Ocampo that failure to make a timely challenge would constitute waiver. That defeats any argument by the United States that Ocampo waived his challenge, as Ocampo "was not required to affirm or deny the convictions or file a written response until addressed personally by the district court and advised of his obligation to do so and—importantly—that any failure to do

so waived any objections." *Id.* at 947. Accordingly, we proceed to the merits of the argument.[3]

### 3. *Prior Conviction Does Not Qualify As a Felony Drug Offense*

To determine whether Ocampo's conviction under California Health & Safety Code section 11378 would qualify as a federal felony drug offense, we look to the statutory elements under which the offender was previously convicted, rather than the underlying conduct or facts giving rise to that conviction. *See United States v. Hollis*, 490 F.3d 1149, 1157 (9th Cir. 2007), *abrogated on other grounds by DePierre v. United States*, 564 U.S. 70 (2011); *accord United States v. Hernandez*, 312 F. App'x 937, 939 (9th Cir. 2009) (unpublished) (applying the categorical approach to the "felony drug offense" definition). This analysis requires a categorical comparison between the predicate offense of conviction and the federal definition. First, "we ask whether the statute of conviction is a categorical match to the generic predicate offense; that is, if the statute of conviction criminalizes only as much (or less) conduct than the generic offense." *Medina-Lara v. Holder*, 771 F.3d 1106, 1112 (9th Cir. 2014). The parties do not dispute that the statute of conviction is "overbroad." *See id.* Thus, we next "ask if the statute of conviction's comparatively 'overbroad' element is divisible." *Id.*

If a predicate statute is divisible—i.e., it lists alternative elemental versions of the offense within the same statute,

---

[3] It is also settled "that failure to comply with section 851(b) renders the sentence illegal," subject to a harmlessness analysis. *Rodriguez*, 851 F.3d at 946 (quoting *United States v. Housley*, 907 F.2d 920, 921 (9th Cir. 1990)). However, Ocampo never makes this argument on appeal, so we do not address it.

rather than simply separate means for committing a single offense—then the modified categorical approach is used to determine which elemental version of the offense was committed. *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). In such a case, "a sentencing court looks to a limited class of documents" from the record of a prior conviction to determine which version of the offense was the basis for that conviction. *Id.* (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)). The limited class of documents includes "the terms of the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26. In the context of a guilty plea, that inquiry is "limited to assessing whether the defendant 'necessarily admitted' the elements of the particular statutory alternative that is a categorical match" with the federal definition. *United States v. Sahagun-Gallegos*, 782 F.3d 1094, 1100 (9th Cir. 2015) (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013)).

With this in mind, the threshold question then is whether California Health & Safety Code section 11378 is a divisible statute. We hold that it is. In *United States v. Martinez-Lopez*, — F.3d —, No. 14-50014, 2017 WL 3203552, at *5 (9th Cir. July 28, 2017) (en banc), our *en banc* Court recently held that a similar statute, California Health & Safety Code section 11352, is divisible with respect to its controlled-substance requirement. In other words, the controlled substances referenced in section 11352 are treated as listing separate offenses, rather than merely listing separate means of committing a single offense.

The rationale of *Martinez-Lopez* applies with equal force to section 11378, the statute before us. *Martinez-Lopez* relied principally on a California Supreme Court decision, *In re Adams*, 536 P.2d 473, 479 (Cal. 1975), which implicitly approved of multiple convictions under a single drug statute when the conduct involved different types of drugs. 2017 WL 3203552, at *5 ("As a result of *Adams* and its progeny, defendants are routinely subjected to multiple convictions under a single statute for a single act as it relates to multiple controlled substances."). That means that the particular drug at issue is not an alternative means of committing a single offense, but in fact constitutes a distinct offense. *Id.* This principle logically extends past section 11352 to other California drug laws that criminalize an activity relating to other referenced controlled substances including section 11378.[4]

*Martinez-Lopez* also pointed out that California jury instructions require a jury to fill in a blank identifying the controlled substance implicated under section 11352. 2017 WL 3203552, at *5. So too for § 11378. Judicial Council of California Criminal Jury Instructions (CALCRIM) 2302. Finally, the Court's citation to scholarly commentary on California law—that "'[a] specified controlled substance' [is] an element common to all criminal drug offenses"—applies to § 11378 as it does to many other California criminal drug laws. 2017 WL 3203552, at *5 (quoting 2 Witkin, Cal. Crim. Law § 102(1)(a) (4th ed. 2012)). Thus, as a simple extension of *Martinez-Lopez*'s logic to a different but similarly structured statute, we hold

---

[4] The *en banc* Court recognized in its opening sentence that its holding would necessarily have implications beyond section 11352: "We took this case en banc to revisit the divisibility *of California drug statutes*." *Martinez-Lopez*, 2017 WL 3203552, at *1 (emphasis added).

that section 11378 is also divisible. This holding enables sentencing courts to use the modified categorical approach to determine *which* controlled-substance element necessarily formed the basis of an offender's prior conviction under section 11378.

Looking to the "limited class of documents" from the record of the prior conviction, *Mathis*, 136 S. Ct. at 2249, there is simply no indication of which controlled-substance element Ocampo pleaded guilty to as part of his section 11378 conviction. The United States shoulders the burden to prove a prior conviction qualifies as a felony drug offense, *see United States v. Pimentel-Flores*, 339 F.3d 959, 968 (9th Cir. 2003), but here the government's proof is inadequate. The government offers from the record of conviction only the abstract of judgment and the state-court minutes from the pronouncement of judgment, but neither document answers the central question before us: whether Ocampo pleaded guilty to a controlled-substance element of section 11378, which is encompassed by the federal "felony drug offense" definition in 21 U.S.C. § 802(44).

Lacking such proof, the United States hangs its case on Ocampo's statement made when objecting to the presentence report in the case before us. Ocampo stated his prior offense "involve[d] 57 grams of Methamphetamine."[5] ER 779. But there are two problems with relying upon this statement as a basis to enhance Ocampo's sentence. First, Ocampo's statement made *in the instant case* appears in a

---

[5] California Health & Safety Code section 11378 includes methamphetamine within its ambit. Subsection (5) of that statute incorporates by reference the substances listed in California Health & Safety Code section 11055(d), which in turn includes methamphetamine, *see id.* § 11055(d)(2).

document that is outside the "limited class of documents" *from the record of a prior conviction* upon which a sentencing court may rely to determine which version of an offense was the basis for a prior conviction. *Mathis*, 136 S. Ct. at 2249.

Second, this statement does not constitute an admission that methamphetamine *was the element of section 11378 to which Ocampo pleaded guilty*—at best it indicates that the conduct giving rise to his prior conviction "involve[d]" methamphetamine. ER 779. We cannot assume from Ocampo's statement here that his section 11378 conviction was predicated on a plea of guilty to the controlled-substance element of methamphetamine in particular. To do so would clash with the Supreme Court's "demand for certainty" when attempting to match a predicate offense with a federal statute. *Shepard*, 544 U.S. at 21. In fact, the Supreme Court has expressly forbidden reliance upon the underlying facts of a prior conviction to determine whether the prior offense categorically matches the federal statute at issue. *Descamps*, 133 S. Ct. at 2287 (a sentencing court cannot "discover what the defendant actually did" and then use those discovered facts to establish a categorical match); *see also Sahagun-Gallegos*, 782 F.3d at 1100–01 (same).[6]

With no judicially noticeable documents from the record of conviction that answer the question, and without resorting to Ocampo's statement in his objections to the presentence

---

[6] Nor do we treat this statement as a waiver or concession that his 1998 conviction qualifies as a felony drug offense. He did not say he was waiving the argument that his section 11378 conviction is not a felony drug offense. In fact, the context of his statement was that he was opposing the probation office's conclusion that his criminal behavior was escalating—he was not intentionally relinquishing his right to challenge the government's effort to establish a categorical match.

report, we hold that the United States has failed to demonstrate that Ocampo's section 11378 conviction was based on a guilty plea to a controlled-substance element that is included within the federal "felony drug offense" definition. Accordingly, we cannot say that Ocampo's prior conviction categorically qualified as a felony drug offense. The sentence therefore is vacated.

### III. CONCLUSION

The conviction is AFFIRMED. The sentence is VACATED, and the matter is REMANDED for resentencing.