SHERIFF, HUMBOLDT COUNTY, NEVADA, Appellant, v. REGINALD DUANE LANG, Respondent.

No. 18658

October 24, 1988                                      763 P.2d 56

---

[1]THE HONORABLE E. M. GUNDERSON, Chief Justice, did not participate in the decision of this appeal.

*Brian McKay,* Attorney General, Carson City; *Jack T. Bullock,* District Attorney, Humboldt County, for Appellant.

*Terri Steik Roeser,* State Public Defender, and *Jeffrey M. Evans,* Deputy, Carson City, for Respondent.

# OPINION

*Per Curiam:*

Felony complaints were filed in the Justice's Court of Union Township, Humboldt County, charging respondent (Lang) with one count each of possession for sale of a schedule III controlled substance (methylamine), importation of a schedule III controlled substance (methylamine), conspiracy to import a schedule III controlled substance (methylamine), possession of a schedule II controlled substance (methamphetamine), and trafficking in a schedule II controlled substance (methamphetamine). A preliminary hearing was subsequently held, and the following evidence was adduced.

Mark Williams, a criminal investigator employed by the Nevada Division of Investigation, testified that on June 13, 1986, his supervisor directed him to go to Winnemucca because the department had received information regarding a car transporting methylamine from Idaho to Nevada. When Williams arrived in Winnemucca, he received a description of the suspect vehicle. Williams observed the vehicle and followed it. He watched the vehicle stop at a gas station and photographed Lang as he refuelled the car. He then observed Lang park his car at a nearby motel. Williams saw Lang carry a cardboard box from his car into his room. Williams and other agents placed Lang's room under surveillance for a period of four days. To facilitate the

surveillance, the agents eventually obtained a room that was next to Lang's room.

On the third day of the surveillance, Williams observed a vehicle with California license plates pull into the motel's parking lot. Two men exited the vehicle and entered Lang's motel room. The two men were identified as Lang's co-defendant (Burns), and Burns' son. The agents then observed Burns' son retrieve a briefcase, two rifles, some clothes and a handgun from the vehicle. Burns' son later left the room to buy some gasoline.

While Burns' son was gone, Lang and Burns had a conversation that Williams and another agent overheard by placing their ears against the door that connected the two rooms. Williams overheard Burns tell Lang that federal agents were following people who bought certain chemicals. The two also discussed the procedure for "cooking" methamphetamine. Finally, Lang told Burns that Lang could distribute methamphetamine in Idaho. Burns and his son later obtained a room in the motel and spent the night there.

The next morning, Burns' son backed the vehicle into a parking space outside Lang's room and began loading cardboard boxes from Lang's room into the vehicle. It was later determined that the boxes contained methylamine. At that time, Williams and the other agents arrested Lang, Burns and Burns' son. Williams and the other agents then searched Lang's room pursuant to a previously issued search warrant. They discovered three briefcases, several guns, a burned methylamine label in the toilet, and another methylamine label in a trash can. Two packages containing a total of 100.47 grams of a mixture containing methamphetamine were recovered from the briefcases. The mixture was only 26 percent pure. Therefore, the maximum amount of methamphetamine that could be contained in the mixture was 26.47 grams. At the conclusion of the preliminary hearing, the justice's court determined that probable cause existed to bind Lang over for trial on the charges recited above.

On June 8, 1987, Lang filed in the district court a pretrial petition for a writ of habeas corpus alleging, among other things, that he did not possess enough methamphetamine to constitute the offense of trafficking, and that insufficient evidence was adduced at the preliminary hearing to hold him for trial on the conspiracy charge. After a hearing, the district court granted Lang's habeas petition insofar as it challenged the trafficking charge and the conspiracy charge. This appeal followed. Because we conclude that the district court erred when it dismissed the trafficking and conspiracy charges, we reverse the order of the district court.

NRS 453.3395 provides in pertinent part:

> Except as authorized by the provisions of NRS 453.011 to 453.552, inclusive, any person who knowingly or intentionally sells, manufactures, delivers or brings into this state or who is knowingly or intentionally in actual or constructive possession of any controlled substance which is listed in schedule II *or any mixture which contains any such controlled substance shall be punished, if the quantity involved:*
>  1. *Is 28 grams or more,* but less than 200 grams, by imprisonment in the state prison for not less than 3 years nor more than 20 years and by a fine of not less than $50,000.

(Emphasis added.) In its order granting Lang's habeas petition below, the district court first held that the language of NRS 453.3395, *supra,* was unclear. Specifically, the court stated that it could not determine whether the phrase "28 grams or more" referred to the total weight of the mixture containing a controlled substance or to the weight of the controlled substance that is contained in the mixture. The district court found that NRS 453.3395 is ambiguous, and correctly noted that ambiguous penal statutes must be construed liberally in favor of an accused. *See* In re Laiolo, 83 Nev. 186, 188, 426 P.2d 726, 727 (1967). Thus, the district court construed the phrase "28 grams or more" to refer to the actual weight of the controlled substance that is contained in a mixture. Because it is undisputed that the mixture found in Lang's room contained only 26.47 grams of methamphetamine, the district court held that insufficient evidence existed to hold Lang for trial on the trafficking charge. *See* NRS 453.3395(1), *supra.*

The state contends that the district court erred by interpreting NRS 453.3395 in such a restrictive manner. We agree. "Where the intention of the legislature is clear, it is the duty of the court to give effect to such intention and to construe the language of the statute to effectuate, rather than to nullify, its manifest purpose." Sheriff v. Luqman, 101 Nev. 149, 155, 697 P.2d 107, 111 (1985).

The legislature enacted NRS 453.3395 to deter large-scale distribution of controlled substances, thus decreasing the number of persons potentially harmed by drug use. *See, e.g.,* State v. Muncy, 339 S.E.2d 466, 471 (N.C.Ct.App. 1986) (stating the legislative intent behind a similar statute). We note, however, that controlled substances are typically sold in a diluted state. *See* United States ex rel. Daneff v. Henderson, 501 F.2d 1180 (2nd Cir. 1974). In cases such as this, where the controlled substance has been "cut," the substance is rendered more harmful to society because the dilution increases the potential number of persons who will partake of the proscribed controlled substance. *See Muncy,* 339 S.E.2d at 471. The increased potential for harm

to society justifies the imposition of more severe penalties for the possession of large amounts of a diluted controlled substance than for smaller amounts of a pure controlled substance. Further, the possession of large amounts of a diluted controlled substance indicates an intent to engage in the large-scale distribution of controlled substances, the very conduct that NRS 453.3395 is designed to deter. In accordance with the legislative policy underlying NRS 453.3395, we conclude that the phrase "28 grams or more" refers to the aggregate weight of the entire mixture rather than the weight of the controlled substance that is contained in the mixture. Thus, in light of the clear legislative purpose underlying NRS 453.3395, we conclude that the district court erred in determining that the statute is ambiguous and construing that statute in respondent's favor. *See, e.g.*, Liparota v. United States, 471 U.S. 419, 427 (1985) (rule of lenity should not be applied where it would conflict with the express or implied intent of the legislature). In reaching this result, we note that other courts interpreting similar statutes have reached the same conclusion. *See Daneff, supra;* State v. Yu, 400 So.2d 762 (Fla. 1981); Lavelle v. State, 297 S.E.2d 234 (Ga. 1982); State v. Muncy, 339 S.E.2d 466 (N.C.Ct.App. 1986); State v. Tyndall, 284 S.E.2d 575 (N.C.Ct.App. 1981).

The state next contends that the district court erred when it determined that insufficient evidence existed to bind Lang over for trial on the conspiracy charge. We agree. "Direct evidence is not required to establish a conspiracy, but circumstantial evidence may be relied upon. This rule is sanctioned for the obvious reason that experience has demonstrated that as a general proposition a conspiracy can only be established by circumstantial evidence." Goldsmith v. Sheriff, 85 Nev. 295, 304, 454 P.2d 86, 92 (1969), (*quoting* People v. Massey, 312 P.2d 365, 382 (Cal. Ct.App. 1957)). The evidence adduced at the preliminary hearing indicated that Lang and Burns entered Nevada from different states, met in Winnemucca, and consummated a transaction involving controlled substances that Lang brought into Nevada from Idaho. From these circumstances, and for the purpose of establishing probable cause to hold Lang for trial, it is reasonable to infer that Lang and Burns had previously agreed to meet in Nevada to do their business. Thus, we conclude that probable cause existed to believe that Lang conspired with Burns to import controlled substances into Nevada. *See* Sheriff v. Hodes, 96 Nev. 184, 606 P.2d 178 (1980) (finding of probable cause to support a criminal charge may be based on slight, even "marginal" evidence because it does not involve a determination of the guilt or innocence of an accused). Accordingly, we conclude that the

district court committed substantial error when it dismissed the conspiracy charge against Lang. *See* Sheriff v. Provenza, 97 Nev. 346, 630 P.2d 265 (1981).

For the reasons expressed above, we reverse the order of the district court granting Lang's pretrial petition for a writ of habeas corpus, and we remand this matter to the district court for further proceedings consistent with the views expressed in this opinion.[1]

[1]The Honorable Cliff Young, Justice, voluntarily disqualified himself from participating in the decision of this appeal.