**134 Nev., Advance Opinion 12**

IN THE SUPREME COURT OF THE STATE OF NEVADA

RYAN ANDREWS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71214

**FILED**

MAR 01 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of trafficking in a controlled substance and unlawful sale of a controlled substance at or near a public park. Second Judicial District Court, Washoe County; Janet J. Berry, Judge.

*Affirmed in part, reversed in part, and remanded.*

Jeremy T. Bosler, Public Defender, and John Reese Petty, Chief Deputy Public Defender, Washoe County,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Terrence P. McCarthy, District Attorney, and Marilee Cate, Deputy District Attorney, Washoe County,
for Respondent.

BEFORE HARDESTY, PARRAGUIRRE and STIGLICH, JJ.

*OPINION*

By the Court, PARRAGUIRRE, J.:

Unless otherwise authorized by statute, NRS 453.3385 prohibits a person from knowingly or intentionally selling or possessing schedule I controlled substances and imposes different penalties depending on the quantity of controlled substance involved. In this appeal, we are asked to determine whether the simultaneous possession of different schedule I controlled substances constitutes separate offenses under NRS 453.3385 or whether the weight of the controlled substances must be aggregated to form a single offense. We conclude that NRS 453.3385 creates a separate offense for each schedule I controlled substance simultaneously possessed by a person. We therefore affirm in part, reverse in part, and remand.

## I.

Appellant Ryan Andrews sold heroin and methamphetamine to a confidential informant inside his apartment. Thereafter, the police obtained a search warrant for Andrews' apartment, where they discovered two bags of heroin totaling 9.445 grams and three bags of methamphetamine totaling 9.532 grams. Respondent State of Nevada charged Andrews with two counts of trafficking in a controlled substance and one count of unlawful sale of a controlled substance at or near a public park. In regard to the two trafficking counts, the State charged Andrews with possessing (1) 4 grams or more, but less than 14 grams, of a schedule I controlled substance in violation of NRS 453.3385(1); and (2) 14 grams or

 

more, but less than 28 grams, of a schedule I controlled substance in violation of NRS 453.3385(2).[1]

Andrews filed a motion to strike both of the trafficking counts, arguing that NRS 453.3385 did not allow the State to charge him with "an aggregate of completely separate controlled substances," and that the State could not charge him for having a mixture of heroin and meth because the drugs were not mixed into one bag. The district court denied Andrews' motion, holding that the weight of different schedule I drugs simultaneously possessed by a defendant may be aggregated under NRS 453.3385.

Although the district court denied Andrews' motion, the State offered to combine both of the trafficking charges into just one count, and Andrews' counsel agreed. Thereafter, the State filed an amended information, which removed the trafficking charge under NRS 453.3385(1), but retained the trafficking charge under NRS 453.3385(2) and the charge of unlawful sale of a controlled substance at or near a public park. Ultimately, a jury convicted Andrews of the two remaining counts, and the district court entered a judgment of conviction. Andrews now appeals the judgment of conviction.

## II.

Andrews argues that different schedule I controlled substances may not be aggregated together, and therefore, because he had less than 14 grams of heroin and less than 14 grams of meth, he should have been

---

[1]NRS 453.3385 was amended in 2015, and thus, NRS 453.3385(1) and (2) are now NRS 453.3385(1)(a) and (1)(b), respectively. 2015 Nev. Stat., ch. 506, § 6, at 3088-89. The amendments became effective July 1, 2015. However, the amendments do not affect our analysis in this matter, and we will address the version of the statute as it existed at the time the police discovered and seized the drugs in Andrews' apartment in June 2015.

 

charged with two counts of trafficking in a controlled substance in violation of NRS 453.3385(1). Specifically, Andrews argues that the unit of prosecution for NRS 453.3385 is the possession of each schedule I controlled substance. Conversely, the State argues that the weight of any schedule I controlled substances simultaneously possessed by a defendant must be aggregated under NRS 453.3385. Thus, the State argues that the unit of prosecution for NRS 453.3385 is each instance of simultaneously possessing schedule I controlled substances. We agree with Andrews.

## A.

"[D]etermining the appropriate unit of prosecution presents an issue of statutory interpretation and substantive law" that this court reviews de novo. *Castaneda v. State*, 132 Nev., Adv. Op. 44, 373 P.3d 108, 110 (2016) (internal quotation marks omitted). When interpreting a statute, this court begins with the statute's text. *Id.*

NRS 453.3385 (2013) reads, in relevant part, as follows:

[A] person who knowingly or intentionally sells, manufactures, delivers or brings into this State or who is knowingly or intentionally in actual or constructive possession of . . . *any controlled substance which is listed in schedule I,* except marijuana, *or any mixture which contains any such controlled substance,* shall be punished . . . if the quantity involved:

1. Is 4 grams or more, but less than 14 grams, for a category B felony by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years and by a fine of not more than $50,000.

2. Is 14 grams or more, but less than 28 grams, for a category B felony by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years and by a fine of not more than $100,000.

> 3. Is 28 grams or more, for a category A felony by imprisonment in the state prison . . . [f]or life with the possibility of parole, with eligibility for parole beginning when a minimum of 10 years has been served; or . . . [f]or a definite term of 25 years, with eligibility for parole beginning when a minimum of 10 years has been served, and by a fine of not more than $500,000.

(Emphases added.)

The State argues that NRS 453.3385 is ambiguous with regard to the unit of prosecution pursuant to this court's analysis in *Castaneda v. State*, 132 Nev., Adv. Op. 44, 373 P.3d 108 (2016), and that this court should look to the statute's "legislative history and construe the statute in a manner that is consistent with reason and public policy." *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). For the reasons set forth below, we agree with the State that the statute is ambiguous.

In *Castaneda*, this court addressed the appropriate unit of prosecution for NRS 200.730, which prohibits a person from knowingly and willfully possessing *"any film, photograph or other visual presentation* depicting a person under the age of 16 years as the subject of a sexual portrayal or engaging in . . . sexual conduct." 132 Nev., Adv. Op. 44, 373 P.3d at 110 (internal quotation marks omitted). In that case, the parties disputed whether the statute authorized a separate conviction for each image possessed or whether the simultaneous possession of multiple images constituted a single offense. *Id.* at 110-11. This court first examined the plain language of the statute and concluded that "[t]he word 'any' has multiple, conflicting definitions, including (1) one; (2) one, some, or all regardless of quantity; (3) great, unmeasured, or unlimited in amount; (4) one or more; and (5) all." *Id.* at 111 (internal quotation marks omitted). After finding NRS 200.730's plain text ambiguous with regard to the

appropriate unit of prosecution, this court examined other legitimate tools of statutory interpretation. *Id.* This court then concluded that other means of statutory interpretation failed to resolve the ambiguities within NRS 200.730's plain text and ultimately held that the rule of lenity required "any" to be construed in the accused's favor such that the charges under NRS 200.730 could not be brought on a per-image basis. *Id.* at 111-14.

Here, NRS 453.3385's use of the word "any" presents the same ambiguities recognized by this court in *Castaneda.* Thus, although the statute criminalizes the possession of a single schedule I controlled substance, it is unclear whether the simultaneous possession of each additional schedule I controlled substance "gives rise to a separate prosecutable offense."[2] *Castaneda*, 132 Nev., Adv. Op. 44, 373 P.3d at 111. However, this does not end our analysis regarding NRS 453.3385's unit of prosecution. Specifically, *Castaneda* does not broadly hold that a statute's use of the word "any" mandates that simultaneous acts of proscribed conduct can only result in one charge and conviction under the statute. Rather, this court narrowly tailored its holding in *Castaneda* such that the rule of lenity was applied to interpret NRS 200.730's unit of prosecution favorably for the appellant after this court had concluded that other tools of

---

[2]We note that the phrase, "any mixture which contains any such controlled substance" in NRS 453.3385 applies when a drug is found in a diluted state, not when multiple, distinct schedule I drugs are found in separate bags. *See Sheriff, Humboldt Cty. v. Lang*, 104 Nev. 539, 542-43, 763 P.2d 56, 58-59 (1988) (holding that diluted substances pose a greater harm to society than uncut or pure substances due to the increased number of persons who will partake in the substance, and thus, the entire weight of a mixture should be considered for the purposes of NRS 453.3395, the schedule II equivalent of NRS 453.3385).

statutory interpretation failed to resolve the ambiguities within NRS 200.730's plain text. *Id.* at 114.

Because we conclude that NRS 453.3385's plain text is ambiguous with respect to the appropriate unit of prosecution, "we turn to other legitimate tools of statutory interpretation, including related statutes, relevant legislative history, and prior judicial interpretations of related or comparable statutes by this or other courts." *Id.* at 111. In doing so, we must determine whether other tools of statutory interpretation are able to resolve the ambiguities within NRS 453.3385's plain text; otherwise, we must invoke the rule of lenity consistent with this court's holding in *Castaneda*. As discussed below, we conclude that the Legislature intended to create a separate offense for each controlled substance simultaneously possessed by a person under NRS 453.3385, and thus, unlike *Castaneda*, the rule of lenity does not apply here.

1.

An examination of other statutes within Nevada's Uniform Controlled Substances Act (UCSA), codified as NRS 453.011 *et seq.*, sheds some light as to NRS 453.3385's appropriate unit of prosecution. Most of the statutes establishing offenses in the UCSA refer to controlled substances in the singular. *See, e.g.*, NRS 453.321, .322, .331, .332, .3325, .3335, .334, .336 (referencing "*a* controlled substance," "*the* controlled substance," or "*an* imitation controlled substance" (emphases added)). However, at least four statutes do employ the term "any" when referencing controlled substances. *See* NRS 453.337, .338, .3385, .3395.

More importantly, at least two statutes directly refer to NRS 453.3385, and in doing so, these statutes refer to controlled substances in the singular. In particular, NRS 453.3383 states that, "[f]or the purposes of NRS 453.3385 . . . the weight of *the controlled substance* as represented

 

by the person selling or delivering it is determinative if the weight as represented is greater than the actual weight of *the controlled substance*." (Emphases added.) Likewise, NRS 453.3405 states that "the adjudication of guilt and imposition of sentence of a person found guilty of trafficking in *a controlled substance* in violation of NRS 453.3385 . . . must not be suspended . . . until the person has actually served the mandatory minimum term of imprisonment." (Emphasis added.)

Accordingly, these statutes indicate that a violation under NRS 453.3385 concerns a single controlled substance and that the weight of a single controlled substance is the relevant inquiry for purposes of NRS 453.3385. *See* NRS 453.013 (providing that the UCSA should be interpreted so "as to effectuate its general purpose and *to make uniform the law with respect to the subject of such sections among those states which enact it*" (emphasis added)).

2.

The State argues that the legislative history and purpose of NRS 453.3385 indicate that different controlled substances may be aggregated together. In particular, the State argues that defining the unit of prosecution by the type of controlled substance does not deter the large-scale distribution of controlled substances and simply encourages drug traffickers to diversify their products. We disagree.

NRS 453.3385's legislative history does not discuss, directly or indirectly, the applicable unit of prosecution; however, it provides that the primary purpose of the statute was to curb the heavy trafficking of controlled substances. *See, e.g.*, Hearing on S.B. 7 Before the Assembly Judiciary Comm., 62d Leg., at 28-34 (Nev., Mar. 10, 1983) (Senator William Raggio, sponsor of the bill, stated that the bill greatly enhanced existing penalties for heavy trafficking of controlled substances, and that the

 

purpose of the severe penalties was to incentivize those convicted under the law to reveal the "'higher ups'" who usually avoid prosecution). Moreover, this court has looked to the legislative intent behind similar trafficking statutes and concluded that the purpose of such statutes is "to deter large-scale distribution of controlled substances, thus decreasing the number of persons potentially harmed by drug use." *Lang*, 104 Nev. at 542, 763 P.2d at 58.

In light of this legislative history, we conclude that Andrews' interpretation of NRS 453.3385 as creating a separate offense for the possession of each controlled substance furthers the legislative intent of deterring large-scale drug trafficking by imposing harsher penalties for those who possess large quantities of different controlled substances. For example, under Andrews' interpretation, a person possessing 30 grams of five different schedule I controlled substances may be subject to five counts of violating NRS 453.3385(3). Conversely, under the same factual scenario, the State's interpretation does less to further the legislative intent of deterring large-scale trafficking as it may result in only one count of violating NRS 453.3385(3) since the weight of the drugs must be aggregated together.

3.

Finally, we conclude that caselaw from other jurisdictions generally supports Andrews' interpretation of NRS 453.3385. In particular, we find *Cunningham v. State*, 567 A.2d 126 (Md. 1989), instructive on this issue.

In *Cunningham*, the Maryland Court of Appeals interpreted the appropriate unit of prosecution under the relevant statutes of the Maryland Controlled Dangerous Substances Act and held that the statutes "authorize a separate conviction and punishment for the possession . . . of each

Supreme Court
of
Nevada

(O) 1947A

controlled dangerous substance covered by the Act, even when there is a simultaneous possession of more than one such substance." 567 A.2d at 129. In doing so, the court explained as follows:

> The article "a" and the word "any" have the same meaning in this context. In the definition section, "controlled dangerous substance" means "any" drug, substance, or immediate precursor in Schedules I through V. We perceive this language to be deliberate, and to demonstrate the intention of the legislature to regulate each controlled dangerous substance, and to authorize a separate conviction for the possession of each substance.

*Id.* (citation omitted).

The *Cunningham* court then cites to cases from other states that have interpreted state statutes similar to the UCSA and have also held that "there may be separate convictions and punishment for simultaneous possession of two or more" controlled substances. *Id.* at 130. Moreover, of those cited cases, the following have reached the same conclusion notwithstanding their respective state statutes' use of the word "any": *Tabb v. State*, 297 S.E.2d 227, 230 (Ga. 1982) (concluding that statute prohibiting the "possess[ion] with intent to distribute *any controlled substance*" was ambiguous, but interpreted to require multiple offenses because *"each drug within a given schedule was placed there because it, individually, is dangerous and warranted control"* (alteration in original) (internal quotation marks omitted)); *State v. Williams*, 542 S.W.2d 3, 5 (Mo. Ct. App. 1976) (concluding that statute prohibiting the possession of *"any* controlled or counterfeit substance" required separate offenses (internal quotation marks omitted)); *State v. Meadors*, 580 P.2d 903, 907 (Mont. 1978) (concluding that statute prohibiting the possession of "any dangerous drug" required separate offenses because the legislature specifically stated what

SUPREME COURT
OF
NEVADA


(O) 1947A

10

types of drugs were prohibited and what the different penalties were depending on the type and amount of the drug involved (internal quotation marks omitted)); and *Melby v. State*, 234 N.W.2d 634, 640-41 (Wis. 1975) (concluding that statute prohibiting the possession of "any dangerous drug" made it a separate offense for each drug because the illegality of each drug must be determined independently without regard to the others (internal quotation marks omitted)). *Id.*

## III.

Although NRS 453.3385's plain text is ambiguous with respect to the appropriate unit of prosecution, we nonetheless hold that, in applying other tools of statutory interpretation, the Legislature intended to create a separate offense for each controlled substance simultaneously possessed by a person. We further hold that the weights of different controlled substances may not be aggregated together to form a single offense under NRS 453.3385. Accordingly, we affirm Andrews' conviction for the unlawful sale of a controlled substance at or near a public park, reverse Andrews' conviction under NRS 453.3385(2), and remand for further proceedings consistent with this opinion.

_____, J.
Parraguirre

I concur:

_____, J.
Hardesty

STIGLICH, J., dissenting:

I agree with Parts I and IIA of the majority opinion. As we held in *Castaneda*, the term "any" within a statute like NRS 453.3385 is ambiguous, so we must look to other sources to determine what the Legislature intended to be the unit of prosecution. 132 Nev., Adv. Op. 44, 373 P.3d 108, 111 (2016).

I disagree, however, with Part IIA(1)-(3), in which the majority interprets the legislative history of NRS 453.3385 to support its position that different schedule I drugs may not be aggregated. To the extent the majority concludes that the Legislature intended NRS 453.3385 to incentivize low-level drug traffickers to reveal "higher ups" in criminal drug syndicates, I believe this intent is furthered by allowing the aggregation of different schedule I drugs. A low-level dealer like Andrews, who diversifies his contraband, is as likely as a single-substance trafficker to have information that could assist law enforcement. I am unconvinced by the majority's hypothetical of the trafficker in possession of five schedule I substances, each in excess of 30 grams. A single violation of NRS 453.3385(3)[1] is already punishable with life imprisonment, so subjecting that trafficker to an additional four counts is unlikely to affect his behavior.

More importantly—as the majority recognizes—this court has already determined the legislative intent behind Nevada's trafficking statutes. In *Sheriff v. Lang*, this court noted that "[t]he legislature enacted NRS 453.3395 to deter large-scale distribution of controlled substances, thus decreasing the number of persons potentially harmed by drug use."

---

[1]As noted in the majority opinion, *ante* at 3 n.1, we apply NRS 453.3385 as it was written at the time of Andrews' offense, prior to amendments enacted in 2015.

 

104 Nev. 539, 542, 763 P.2d 56, 58 (1988). While the present case concerns NRS 453.3385 (schedule I trafficking) rather than NRS 453.3395 (schedule II trafficking) as in *Lang*, both statutes derive from the same bill, share the same legislative history, and were enacted for the same purpose. That purpose—as we determined in *Lang*—was to "decreas[e] the number of persons potentially harmed by drug use." 104 Nev. at 542, 763 P.2d at 58.

In light of that purpose, the State's position is sound. Trafficking in 9 grams of heroin and 9 grams of methamphetamine harms just as many people as trafficking in 18 grams of either drug alone.[2] That is why NRS 453.3385 tethers the level of punishment to the weight of contraband: more substance leads to more harm, and more harm justifies harsher punishment. Our Legislature did not distinguish between different schedule I drugs—with the exception of marijuana—so neither should we. Moreover, I see no logical reason to differentiate possession of two schedule I substances mixed within one bag from possession of the same substances within separate bags. It seems absurd to subject the former but not the latter to NRS 453.3385's heightened punishments.

The primary case the majority cites to support its position— *Cunningham v. State*—is factually and legally distinguishable from this case. 567 A.2d 126 (Md. 1989). The defendant in *Cunningham* possessed substances listed in separate schedules under Maryland law. *Id.* at 131. I

---

[2]Indeed, a trafficker who diversifies his illegal contraband potentially poses a greater threat to public health, because diversification exposes potential buyers to new and potentially more addictive substances. It also increases the likelihood that buyers will combine drugs, possibly leading to "synergistic lethal effects." Trujillo, Smith, & Guaderrama, *Powerful Behavioral Interactions Between Methamphetamine and Morphine*, 99 Pharmacology Biochem. Behav., 451, 457 (2011).

agree that substances from different schedules cannot be aggregated, but that is not the issue in this case. Furthermore, Maryland's statutes are easily distinguishable from NRS 453.3385 in that they do not proscribe higher punishments based on the quantity of drugs involved, nor do they base punishment according to schedule. *Id.* at 128. Indeed, in deciding that possession of heroin and cocaine merited two separate convictions, the Maryland court noted: "Had the legislature tied the scheme of punishments directly to the five schedules, we might have found th[e] argument [that the unit of prosecution is based upon the schedules] to have more force." *Id.* at 131.

Tying "the scheme of punishments directly to the five schedules" is precisely what our Nevada trafficking statutes do. *See* NRS 453.3385 (schedule I); 453.3395 (schedule II).[3] This schedule-based punishment scheme evinces the Legislature's intent to allow the weights of different schedule I substances to be aggregated. *See State v. Delfino*, 490 N.E.2d 884, 888 (Ohio 1986) ("[P]ossession of a substance or substances in Schedule I or II, with the exception of marijuana, is a single and separate offense."); *cf. United States v. Martin*, 302 F. Supp. 498, 501 (W.D. Penn. 1969) ("[E]ach specific narcotic drug cannot be the basis for a separate count."), *aff'd*, 428 F.2d 1140 (3d Cir. 1970); *State v. Williams*, 530 A.2d 627, 630 (Conn. App. Ct. 1987) ("[T]here is no indication that the legislature intended to authorize multiple punishment for the simultaneous possession of more than one narcotic."); *State v. Butler*, 271 A.2d 17, 18 (N.J. Super. Ct. App. Div. 1970) ("This single act of possession, which occurred at one time and in one place, cannot be the basis for multiple offenses.").

---

[3]The Nevada Legislature has not enacted statutes to punish the trafficking of substances listed in schedules III-V.

For the foregoing reasons, I believe that NRS 453.3385 does allow the weight of different schedule I substances to be aggregated when calculating "the quantity involved." Therefore, I dissent.

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A