STIGLICH, J., dissenting:
I agree with Parts I and IIA of the majority opinion. As we held in Castaneda, the term "any" within a statute like NRS 453.3385 is ambiguous, so we must look to other sources to determine what the Legislature intended to be the unit of prosecution. 132 Nev. ----, ----, 373 P.3d 108, 111 (2016).
I disagree, however, with Part IIA(1)-(3), in which the majority interprets the legislative history of NRS 453.3385 to support its position that different schedule I drugs may not be aggregated. To the extent the majority concludes that the Legislature intended NRS 453.3385 to incentivize low-level drug traffickers to reveal "higher ups" in criminal drug syndicates, I believe this intent is furthered by allowing the aggregation of different schedule I drugs. A low-level dealer like Andrews, who diversifies his contraband, is as likely as a single-substance trafficker to have information that could assist law enforcement. I am unconvinced by the majority's hypothetical of the trafficker in possession of five schedule I substances, each in excess of 30 grams. A single violation of NRS 453.3385(3)[1] is already punishable with life imprisonment, so subjecting that trafficker to an additional four counts is unlikely to affect his behavior.
More importantly-as the majority recognizes-this court has already determined the legislative intent behind Nevada's trafficking statutes. In Sheriff v. Lang, this court noted that "[t]he legislature enacted NRS 453.3395 to deter large-scale distribution of controlled substances, thus decreasing the number of persons potentially harmed by drug use." 104 Nev. 539, 542, 763 P.2d 56, 58 (1988). While the present case concerns NRS 453.3385 (schedule I trafficking) rather than NRS 453.3395 (schedule II trafficking) as in Lang , both statutes derive from the same bill, share the same legislative history, and were enacted for the same purpose. That purpose-as we determined in Lang -was to "decreas[e] the number of persons potentially harmed by drug use." 104 Nev. at 542, 763 P.2d at 58.
In light of that purpose, the State's position is sound. Trafficking in 9 grams of heroin and 9 grams of methamphetamine harms just as many people as trafficking in 18 grams of either drug alone.[2] That is why NRS 453.3385 tethers the level of punishment to the weight of contraband: more substance leads to more harm, and more harm justifies harsher punishment. Our Legislature did not distinguish between different schedule I drugs-with the exception of marijuana-so neither should we. Moreover, I see no logical reason to differentiate possession of two schedule I substances mixed within one bag from possession of the same substances within separate bags. It seems absurd to subject the former but not the latter to NRS 453.3385's heightened punishments.
The primary case the majority cites to support its position- Cunningham v. State -is factually and legally distinguishable from this case. 318 Md. 182, 567 A.2d 126 (1989).
*43 The defendant in Cunningham possessed substances listed in separate schedules under Maryland law. Id. at 131. I agree that substances from different schedules cannot be aggregated, but that is not the issue in this case. Furthermore, Maryland's statutes are easily distinguishable from NRS 453.3385 in that they do not proscribe higher punishments based on the quantity of drugs involved, nor do they base punishment according to schedule. Id . at 128. Indeed, in deciding that possession of heroin and cocaine merited two separate convictions, the Maryland court noted: "Had the legislature tied the scheme of punishments directly to the five schedules, we might have found th[e] argument [that the unit of prosecution is based upon the schedules] to have more force." Id. at 131.
Tying "the scheme of punishments directly to the five schedules" is precisely what our Nevada trafficking statutes do. See NRS 453.3385 (schedule I); 453.3395 (schedule II).[3] This schedule-based punishment scheme evinces the Legislature's intent to allow the weights of different schedule I substances to be aggregated. See State v . Delfino, 22 Ohio St.3d 270, 490 N.E.2d 884, 888 (1986) ("[P]ossession of a substance or substances in Schedule I or II, with the exception of marijuana, is a single and separate offense."); cf. United States v. Martin, 302 F.Supp. 498, 501 (W.D. Penn. 1969) ("[E]ach specific narcotic drug cannot be the basis for a separate count."), aff'd , 428 F.2d 1140 (3d Cir. 1970) ; State v. Williams, 12 Conn.App. 225, 530 A.2d 627, 630 (Conn. App. Ct. 1987) ("[T]here is no indication that the legislature intended to authorize multiple punishment for the simultaneous possession of more than one narcotic."); State v. Butler, 112 N.J.Super. 305, 271 A.2d 17, 18 (1970) ("This single act of possession, which occurred at one time and in one place, cannot be the basis for multiple offenses.").
For the foregoing reasons, I believe that NRS 453.3385 does allow the weight of different schedule I substances to be aggregated when calculating "the quantity involved." Therefore, I dissent.

As noted in the majority opinion, ante at 38 n.1, we apply NRS 453.3385 as it was written at the time of Andrews' offense, prior to amendments enacted in 2015.

Indeed, a trafficker who diversifies his illegal contraband potentially poses a greater threat to public health, because diversification exposes potential buyers to new and potentially more addictive substances. It also increases the likelihood that buyers will combine drugs, possibly leading to "synergistic lethal effects." Trujillo, Smith, & Guaderrama, Powerful Behavioral Interactions Between Methamphetamine and Morphine, 99 Pharmacology Biochem. Behav., 451, 457 (2011).

The Nevada Legislature has not enacted statutes to punish the trafficking of substances listed in schedules III-V.