**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. GIBRAN RICHARDO FIGUEROA-BELTRAN, *Defendant-Appellant.* | No. 16-10388 D.C. No. 2:15-cr-00176-KJD-GWF-1 ORDER CERTIFYING QUESTIONS TO THE NEVADA SUPREME COURT |

Filed June 6, 2018

Before: Diarmuid F. O'Scannlain and Johnnie B. Rawlinson, Circuit Judges, and Sarah S. Vance,[*] District Judge.

---

[*] The Honorable Sarah S. Vance, United States District Judge for the Eastern District of Louisiana, sitting by designation.

## SUMMARY[**]

**Criminal Law / Certification of Questions to Nevada Supreme Court**

In an appeal from a criminal sentence, the panel certified the following questions to the Nevada Supreme Court:

> 1. Is Nev. Rev. Stat. § 453.337 divisible as to the controlled substance requirement?
>
> 2. Does the decision in *Luqman* conclude that the existence of a controlled substance is a "fact" rather than an "element" of § 453.337, rendering the statute indivisible? If so, can this conclusion be reconciled with *Muller*?
>
> 3. Does the decision in *Muller* conclude that offenses under § 453.337 comprise "distinct offenses requiring separate and different proof," rendering the statute divisible as to the controlled substance requirement? If so, can this be reconciled with *Luqman*?

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

The issue for decision in this case is whether Nevada Revised Statute § 453.337, which criminalizes conduct related to certain controlled substances identified by reference to the Nevada Administrative Code, is divisible under federal law for the purpose of applying the federal sentencing guidelines.[1]  This question of law is determinative of the matter pending before this court and we are not aware of any clearly controlling precedent in the existing decisions of the Nevada Supreme Court.  Accordingly, pursuant to Rule 5 of the Nevada Rules of Appellate Procedure,[2] we respectfully request that the Nevada Supreme Court determine whether, under Nevada law, § 453.337 is divisible.

---

[1] Section 453.337 provides in pertinent part:

> Except as otherwise authorized by the provisions of NRS 453.011 to 453.552, inclusive, it is unlawful for a person to possess for the purpose of sale flunitrazepam, gamma-hydroxybutyrate, any substance for which flunitrazepam or gamma-hydroxybutyrate is an immediate precursor or any controlled substance classified in schedule I or II.

Nev. Rev. Stat. § 453.337 (2017).

[2] Rule 5(h) provides:

> The written opinion of the Supreme Court stating the law governing the questions certified shall be sent by the clerk under the seal of the Supreme Court to the certifying court and to the parties and shall be res judicata as to the parties.

Nev. R. App. P. 5(h).

## I.  Factual and Procedural Background

In 2012, Gibran Figueroa-Beltran (Figueroa), a native of Mexico, was found in possession of one gram of cocaine and 5.8 grams of heroin during a traffic stop.  He was convicted in the Eighth Judicial District Court of possession of a controlled substance with intent to sell in violation of § 453.337 and sentenced to 19 to 48 months' imprisonment. He was paroled approximately one year later, but subsequently arrested for selling a controlled substance, and removed to Mexico.

Within two years of his removal, Figueroa illegally reentered the United States, where he was once again arrested for selling a controlled substance.  While those charges were pending, Figueroa was charged with 26 other counts of drug-related offenses, including receiving stolen property, receiving a stolen vehicle, being a prohibited person in possession of firearms, operating a place for the sale of controlled substances, possessing for sale Schedule I/II controlled substances, trafficking Schedule I controlled substances (28+ grams), conspiring to violate the federal Controlled Substances Act, and selling Schedule I or II controlled substances.

A federal grand jury later indicted Figueroa for being a deported alien found unlawfully in the United States, in violation of 8 U.S.C. § 1326.[3]  Figueroa pled guilty without

---

[3] Section 1326 provides in pertinent part:

[A]ny alien who–

a plea agreement and the district court imposed a low-end Guideline sentence of 41 months' imprisonment followed by a three-year term of supervised release. In calculating the 41-month sentence, the district court began with a base offense level of 8 and added a 16-level enhancement under United States Sentencing Guidelines (U.S.S.G.) § 2L1.2 due to Figueroa's 2012 conviction for possession of a controlled substance for sale. Figueroa objected to the enhancement, noting that his conviction for a violation of § 453.337 did not qualify as a drug trafficking offense.

Figueroa filed a timely appeal challenging the district court's application of the 16-level enhancement provided for in U.S.S.G. § 2L1.2.[4]

---

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act . . .

8 U.S.C. § 1326.

[4] Section 2L1.2 provided:

(a) Base Offense Level: 8

(b) Specific Offense Characteristic

(1) Apply the Greatest:

If the defendant previously was deported, or unlawfully remained in the United States, after–

(A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by 16 levels if the conviction receives criminal history points under Chapter Four or by 12 levels if the conviction does not receive criminal history points;

(B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels if the conviction receives criminal history points under Chapter Four or by 8 levels if the conviction does not receive criminal history points;

(C) a conviction for an aggravated felony, increase by 8 levels;

(D) a conviction for any other felony, increase by 4 levels; or

(E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 4 levels.

U.S.S.G. § 2L1.2 (2015).

## II.  Governing Federal Law

Section 2L1.2 applied to defendants who "unlawfully enter[ed] or remain[ed] in the United States."   U.S.S.G. § 2L1.2.  At the time of Figueroa's sentencing on August 24, 2016, Guideline § 2L1.2(b)(1)(A) provided for a base offense level of 8, plus a 16-level enhancement if the defendant was "previously . . . deported" and had a previous conviction for a "drug trafficking offense" with a sentence exceeding 13 months.   *Id.*  § 2L1.2(b)(1)(A).   The commentary to Guideline § 2L1.2 defined a "drug trafficking offense" as:

> an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id.* § 2L1.2, cmt. app. n.l (B)(iv) (2015).

To assess whether a prior conviction under § 453.337 qualified as a drug trafficking offense under Guideline § 2L1.2, we employ a "three-step analysis." *United States v. Martinez-Lopez*, 864 F.3d 1034, 1038 (9th Cir. 2017) (en banc) (citation omitted).  At the first step, "we ask whether [§ 453.337] is a categorical match with a federal drug trafficking offense." *Id.* (citation omitted).  In so doing, "we look only to the statutory definitions of the corresponding

offenses."**5**    *Id.* (citation and internal quotation marks omitted).  If § 453.337 "proscribes the same amount of or less conduct than that qualifying as a federal drug trafficking offense, then the two offenses are a categorical match," and the conviction under that statute "automatically qualifies as a predicate drug trafficking offense."  *Id.* (citations and internal quotation marks omitted).

If § 453.337 is not a categorical match, we proceed to the second step of the analysis. At this step, "we ask whether [§ 453.337] is a divisible statute which sets out one or more elements of the offense in the alternative" and "thereby defines multiple crimes."  *Id.* at 1038–39 (citations, alterations, and internal quotation marks omitted).  A statute is not necessarily divisible because it is couched in terms of a disjunctive list.  Rather than relying on the disjunctive-list articulation, we "consult authoritative sources of state law to determine whether a statute contains alternative elements defining multiple crimes or alternative means by which a defendant might commit the same crime."  *Id.* at 1039 (citation and internal quotation marks omitted).  If  "(1) a state court decision definitively answers the question, or (2) the statute on its face resolves the issue," our analysis ends.  *Id.* (citation, alterations, and internal quotation marks omitted).

---

**5** The federal comparator statute is the Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.  See Martinez-Lopez*, 864 F.3d at 1037 (comparing the CSA with California drug trafficking statute for the purpose of determining applicability of a sentencing enhancement pursuant to U.S.S.G. § 2L1.2).  Similarly to § 453.337, the CSA cross-references federal drug schedules.  *See* 21 U.S.C. § 802.

The elements of a statute "are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (citation and internal quotation marks omitted). In contrast, the means used to fulfill an element is "extraneous to the crime's legal requirements." *Id.* The facts underlying the means "need neither be found by a jury nor admitted by a defendant" for a conviction. *Id.* Our divisibility inquiry thus turns on whether the elements of a crime of conviction "are broader than those of a listed generic offense," without regard to "[h]ow a given defendant actually perpetrated the crime." *Id.* at 2251.

If § 453.337 is divisible, we "proceed to the third step in our analysis and apply the modified categorical approach" in which "we examine judicially noticeable documents of conviction to determine which statutory phrase was the basis for the conviction." *Martinez-Lopez*, 864 F.3d at 1039 (citation omitted). "If the defendant pled or was found guilty of the elements constituting a federal drug trafficking offense, the prior state conviction [of violating § 453.337] may serve as a predicate offense under the sentencing guidelines." *Id.* (citation omitted). We may apply this approach only if § 453.337 is divisible.

Section 453.337 prohibits the "possess[ion] for the purpose of sale . . . any controlled substance classified in schedule I or II." Nev. Rev. Stat. § 453.337. To determine if the statute is a categorical match for its federal counterpart, we examine whether § 453.337 "proscribes the same amount of or less conduct" than the federally defined offense. *Martinez-Lopez*, 864 F.3d at 1038. As the government has conceded, the schedules referenced in § 453.337 criminalize more substances than are listed in the federal Controlled

Substances Act. Consequently, as in *Martinez-Lopez*, "[t]his case . . . turns on the second step of our analysis," whether § 453.337 is divisible and thereby susceptible to examination under the modified categorical approach. *Id.* at 1039. However, we are aware of no controlling Nevada precedent definitively resolving whether or not § 453.337 is a divisible statute.

## III.     Parties' Arguments

Figueroa contends that the Nevada Supreme Court decision of *Sheriff v. Luqman*, 697 P.2d 107 (Nev. 1985), established that § 453.337 is not divisible as to the identity of the controlled substance possessed by the accused. According to Figueroa, *Luqman* established that, under Nevada's post-1981 statutory drug scheme, which encompasses § 453.337, the identity of the controlled substance is "merely a fact"—rather than an "element of the offense."

At issue in *Luqman* was the authority of the state board of pharmacy to "classify drugs into various schedules according to the drug's propensity for harm and abuse," thereby setting the penalties for violations of the relevant statutory provisions. 697 P.2d at 109–10. The Nevada Supreme Court explained:

> [T]he legislature can make the application or operation of a statute complete within itself dependent upon the existence of certain facts or conditions, the ascertainment of which is left to the administrative agency. In doing so the legislature vests the agency with mere fact

finding authority and not the authority to legislate. . . .

*Id.* (citations omitted). *Luqman* held that, "[a]lthough the legislature may not delegate its power to legislate," such authorization to the board properly "delegate[d] the power to determine the facts or state of things upon which the law makes its own operations depend," because the agency, by classifying controlled substances, was "only authorized to determine the facts which will make the statute effective." *Id.* (citations omitted). Figueroa seizes upon this language to describe the identity of the controlled substance as a "fact" rather than an "element" of § 453.337.

The government counters that the Nevada Supreme Court decision of *Muller v. Sheriff*, 572 P.2d 1245 (Nev. 1977), establishes that § 453.337 is divisible as to its controlled substance requirement. In *Muller*, the defendant-appellant contended that where "the sale of [two] different controlled substances was consummated simultaneously in one transaction, his conduct d[id] not constitute two separate offenses for which he may be charged." 572 P.2d at 1245. The Nevada Supreme Court disagreed, holding that:

> The sale of heroin and the sale of cocaine are distinct offenses requiring separate and different proof. Here the record shows that two distinct offenses were (probably) committed since the sale of each controlled substance requires proof of an additional fact which the other does not, viz., the particular identity of the controlled substance sold.

*Id.* (citations, alterations, and internal quotation marks omitted).

The government relies on this language to assert that the *Muller* decision establishes the divisibility of § 453.337. The government distinguishes *Luqman* on the basis that *Luqman* "did *not* address whether the identity of a controlled substance is an element of Nevada controlled substance offenses."

*Luqman* and *Muller* seemingly stand in conflict. *Luqman* suggests that the identity of a controlled substance is a non-elemental factual determination. In contrast, *Muller* appears to conclude that the sale of one controlled substance is an offense distinct from the sale of another, and proof of the identity of the controlled substance at issue is required. Without further guidance, we cannot say with confidence that the Nevada precedent definitively answers the question whether § 453.337 is divisible as to the identity of a controlled substance.

## IV.    Certified Questions and Further Proceedings

When engaging in a divisibility inquiry, we look to such authoritative sources of state law as state court decisions and the wording of the relevant state statute. *See Mathis*, 136 S. Ct. at 2256. If we cannot readily discern the nature of the statute from these sources, we may further look to the record documents—indictments, jury instructions, plea colloquies and plea agreements—for guidance. *See id.* at 2256–57 and n.7.

With this framework, we respectfully certify the following questions of law to the Nevada Supreme Court:

1.  Is Nev. Rev. Stat. § 453.337 divisible as to the controlled substance requirement?

2. Does the decision in *Luqman* conclude that the existence of a controlled substance is a "fact" rather than an "element" of § 453.337, rendering the statute indivisible?  If so, can this conclusion be reconciled with *Muller*?

3.  Does the decision in *Muller* conclude that offenses under § 453.337 comprise "distinct offenses requiring separate and different proof," rendering the statute divisible as to the controlled substance requirement?  If so, can this conclusion be reconciled with *Luqman*?

"Our phrasing of the questions should not restrict the Court's consideration of the issues involved. We acknowledge that the Court may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties . . ."  *Raynor v. United of Omaha Life Ins. Co.*, 858 F.3d 1268, 1273 (9th Cir. 2017) (citation and alternations omitted).  We will abide by the decision of the Nevada Supreme Court, as specified in Nevada Rule of Appellate Procedure 5(h).  *See Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1048 (9th Cir. 2011).  "If the Court determines that the questions presented in this case are inappropriate for certification, or if it declines the certification for any other reason, we will resolve the questions according to our best understanding of [Nevada] law."  *Raynor*, 858 F.3d at 1273.

We accordingly direct the Clerk of this court to forward a copy of this order, under official seal, to the Nevada

Supreme Court, together with copies of all briefs and excerpts of record that have been filed in this court, with a certificate of service on the parties.

We stay further proceedings involving this case pending a response from the Nevada Supreme Court. This appeal is withdrawn from submission and will be resubmitted following the conclusion of proceedings in the Nevada Supreme Court. The Clerk is directed to administratively close this docket, pending further order. We direct the parties to notify the Clerk of this court within one week after the Nevada Supreme Court accepts or rejects the certification, and if it accepts certification, again to notify this court within one week after that court renders its opinion. As required by Nevada Rule of Appellate Procedure 5(c)(5), the names and addresses of counsel appear in the appendix. *See Chapman*, 651 F.3d at 1048.

It is so **ORDERED.**

Respectfully submitted,

Diarmuid F. O'Scannlain and Johnnie B. Rawlinson, Circuit Judges, and Sarah S. Vance, District Judge.

_____

Johnnie B. Rawlinson
United States Circuit Judge, presiding

## APPENDIX

Rene Valladares, Federal Public Defender, and Cristen C. Thayer and Amy B. Cleary, Assistant Federal Public Defenders, 411 E. Bonneville, Ste. 250, Las Vegas, Nevada 89101, for Defendant-Appellant.

Dayle Elieson, Interim United States Attorney, Elizabeth O. White, Appellate Chief, and Nancy M. Olson, Assistant United States Attorney, District of Nevada, 501 Las Vegas Blvd. S., Suite 1100, Las Vegas, Nevada 89101, for Plaintiff-Appellee.