136 Nev., Advance Opinion 45

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| GIBRAN RICHARDO FIGUEROA-BELTRAN, Appellant, vs. UNITED STATES OF AMERICA, Respondent. | No. 76038 **FILED** JUL 16 2020 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Certified question, pursuant to NRAP 5, regarding a federal sentencing enhancement for a prior conviction of possession of a controlled substance with intent to sell under NRS 453.337. United States Court of Appeals for the Ninth Circuit; Diarmuid F. O'Scannlain and Johnnie B. Rawlinson, Circuit Judges; Sarah S. Vance, District Judge.

*Question answered.*

Rene L. Valladares, Federal Public Defender, and Cristen C. Thayer, Assistant Federal Public Defender, Las Vegas,
for Appellant.

Nicholas A. Trutanich, United States Attorney, District of Nevada, Elizabeth O. White, Appellate Chief, and Nancy M. Olson and Elham Roohani, Assistant United States Attorneys, Las Vegas,
for Respondent.

_____

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, GIBBONS, J.:

The United States Court of Appeals for the Ninth Circuit has certified three questions to this court pursuant to NRAP 5. Although we

accept the certified questions, we reframe them into one question to better reflect existing state law principles: Is the identity of a substance an element of the crime articulated in NRS 453.337? NRS 453.337 prohibits a person from possessing, for the purpose of sale, flunitrazepam, gamma-hydroxybutyrate, or any schedule I or II controlled substance. We conclude that the identity of a substance is an element of the crime described in NRS 453.337, such that each schedule I or II controlled substance simultaneously possessed with the intent to sell constitutes a separate offense.

## FACTS AND PROCEDURAL HISTORY

In 2012, Gibran Richardo Figueroa-Beltran, a native of Mexico, was convicted of possession of a controlled substance with intent to sell in violation of NRS 453.337 for his simultaneous possession of heroin and cocaine and sentenced to 19 to 48 months in prison. Figueroa-Beltran was paroled approximately one year later, but he was subsequently arrested for selling a controlled substance and deported to Mexico. Figueroa-Beltran illegally reentered the United States and again was arrested for selling a controlled substance. While the charges relating to Figueroa-Beltran's most recent arrest were pending in state court, in federal court Figueroa-Beltran was charged with, and pleaded guilty to, being a deported alien found unlawfully in the United States in violation of 8 U.S.C. § 1326 (2012). Figueroa-Beltran was sentenced to 41 months in prison, which included a 16-level sentencing enhancement due to his 2012 conviction in Nevada for violating NRS 453.337. *See* United States Sentencing Commission, *Guidelines Manual* (U.S.S.G.), § 2L1.2 (Nov. 2015).

U.S.S.G. § 2L1.2 provides that a 16-level enhancement may be added to a sentence if the defendant has been convicted of a drug trafficking offense for which the defendant received a sentence of more than 13 months. A drug trafficking offense is defined as "an offense under . . . state . . . law

SUPREME COURT
OF
NEVADA

(O) 1947A

2

that prohibits . . . the possession of a controlled substance (or a counterfeit substance) with intent to . . . distribute, or dispense." U.S.S.G. § 2L1.2, comment. (n.1)(B)(iv) (2015). Figueroa-Beltran appealed to the Ninth Circuit, challenging the federal district court's application of the 16-level enhancement to his sentence, arguing that his conviction under NRS 453.337 did not qualify as a predicate drug trafficking offense under the federal sentencing guidelines.

Federal courts employ "a three-step analysis to determine whether a prior conviction under state law qualifies as a predicate drug trafficking offense under the federal sentencing guidelines." *United States v. Martinez-Lopez*, 864 F.3d 1034, 1038 (9th Cir. 2017). Without considering the facts underlying the conviction, the federal court must first determine whether the state law is a categorical match with the federal drug trafficking law. *Id.* Under this first step, federal courts "look only to the statutory definitions of the corresponding offenses." *Id.* (internal quotations omitted). "If a state law proscribes the same amount of or less conduct than that qualifying as a federal drug trafficking offense, then the two offenses are a categorical match" and the enhancement applies. *Id.* (internal quotations omitted). In the instant case, the Ninth Circuit determined, and the government conceded, that because "the schedules referenced in NRS 453.337 criminalize more substances than are listed in the federal Controlled Substances Act," NRS 453.337 is not a categorical match to its federal counterpart. *United States v. Figueroa-Beltran*, 892 F.3d 997, 1002-03 (9th Cir. 2018); *see also* 21 U.C.S.A. § 801 et seq. (West 1970).

When a state statute is not a categorical match to its federal counterpart, federal courts must then employ the second step of the analysis and ask whether the state statute is divisible. *Martinez Lopez*, 864 F.3d at 1038. A statute is divisible when it lists one or more elements in the

alternative, thereby defining multiple, alternative versions of the same crime. *Mathis v. United States*, ___ U.S. ___, ___, 136 S. Ct. 2243, 2249 (2016); *Descamps v. United States*, 570 U.S. 254, 261-62 (2013). Conversely, a statute is indivisible if it sets forth alternative means through which a defendant satisfies a single element of the offense. *See Mathis*, ___ U.S. at ___, 136 S. Ct. at 2249.

Only if the state statute is divisible may the court proceed to the third step in the analysis and apply the modified categorical approach. *Martinez-Lopez*, 864 F.3d at 1039. "At this step," a federal court "examine[s] judicially noticeable documents of conviction to determine which statutory phrase was the basis for the conviction." *Id.* (internal quotations omitted). Under this approach, if Figueroa-Beltran pleaded or was found guilty of the elements of a crime that would also constitute a federal drug trafficking offense (i.e., the crime involved a substance criminalized in both NRS 453.337 and the federal Controlled Substances Act), the prior state conviction may serve as a predicate offense under the federal sentencing guidelines and warrant a sentence enhancement. *Id.*

When reviewing Figueroa-Beltran's appeal, the Ninth Circuit concluded that no controlling Nevada precedent clearly resolved whether a substance's identity is an element of the crime articulated in NRS 453.337. *See Figueroa-Beltran*, 892 F.3d at 1003. Such a determination would have assisted the Ninth Circuit in determining whether NRS 453.337 was divisible for federal sentencing purposes. Thus, the Ninth Circuit filed its certified questions with this court.

## DISCUSSION

Rule 5 of the Nevada Rules of Appellate Procedure permits this court to accept and answer certified questions from "federal courts when the answers may be determinative of part of the federal case, there is no

controlling [Nevada] precedent, and the answer will help settle important questions of law." *Savage v. Pierson*, 123 Nev. 86, 89, 157 P.3d 697, 699 (2007) (alteration in original) (internal quotations omitted). "As the answering court, our role is limited to answering the questions of law posed to [us;] the certifying court retains the duty to determine the facts and to apply the law provided by the answering court to those facts." *Progressive Gulf Ins. Co. v. Faehnrich*, 130 Nev. 167, 170, 327 P.3d 1061, 1063 (2014) (alteration in original) (internal quotations omitted). Thus, "[w]e accept the facts as stated in the certification order and its attachments." *Id.* (alteration and internal quotations omitted).

Figueroa-Beltran argues that the divisibility of a state statute for purposes of a federal sentencing enhancement is a purely federal question and, thus, this court should not answer the Ninth Circuit's questions.[1] Because the questions posed by the Ninth Circuit raise important questions of law that are not currently answered by existing Nevada law, we exercise our discretion under NRAP 5 and accept the

[1]The Ninth Circuit certified the following questions to this court:

(1) Is NRS 453.337 divisible as to the controlled substance requirement?

(2) Does this court's decision in *Sheriff v. Luqman*, 101 Nev. 149, 697 P.2d 107 (1985), conclude that the existence of a controlled substance is a "fact" rather than an "element" of NRS 453.337 rendering the statute indivisible? If so, can this conclusion be reconciled with *Muller v. Sheriff*, 93 Nev. 686, 572 P.2d 1245 (1977)?

(3) Does this court's decision in *Muller* conclude that offenses under NRS 453.337 comprise "distinct offenses requiring separate and different proof," rendering the statute divisible as to the controlled substance requirement? If so, can this conclusion be reconciled with *Luqman*?

SUPREME COURT
OF
NEVADA

(O) 1947A

questions. Moreover, because our state law has not applied the federal concept of divisibility to our criminal statutes, we reframe the questions posed by the Ninth Circuit to a single question: Is the identity of a substance an element of the crime articulated in NRS 453.337?[2] *See Chapman v. Deutsche Bank Nat'l Tr. Co.*, 129 Nev. 314, 317-18, 302 P.3d 1103, 1105 (2013) (explaining that this court has discretion to rephrase a certified question).

*Defining elements for purposes of this inquiry*

Before we can determine whether a drug's identity is an element of the crime articulated in NRS 453.337, we must define the difference between an element of a crime and a means of committing the crime. Elements of crimes "are the constituent parts of a crime's legal definition[, i.e.,] the things the prosecution must prove to sustain a conviction." *Mathis*, ___ U.S. at ___, 136 S. Ct. at 2248 (internal quotations omitted). "At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant." *Id.* "[A]t a plea hearing, they are what the defendant necessarily admits when he pleads guilty." *Id.* Unlike elements, facts "are mere real-world things—extraneous to the crime's legal requirements. . . . They are circumstance[s] or event[s] having no legal effect [or] consequence . . . . [T]hey need neither be found by a jury nor admitted by a defendant." *Id.* (alterations in original) (citation and internal quotations omitted). *Mathis* describes the following hypothetical: suppose a statute lists use of a deadly weapon as an element of a crime and provides that the use of a knife, gun, bat, or similar weapon would all satisfy this element. *Id.* at ___, 136 S. Ct. at 2249. The United States Supreme Court

[2]The amended version of NRS 453.337 that takes effect July 1, 2020, does not impact our analysis.

SUPREME COURT
OF
NEVADA

(O) 1947A

explained that because this list specifies different ways of satisfying a single element (use of a deadly weapon) of a single crime, a jury does not need to find (nor does the defendant need to admit) that any particular item was used. *Id.* "A jury could convict even if some jurors conclude[d] that the defendant used a knife, while others conclude[d] he used a gun, so long as all agreed that the defendant used a deadly weapon." *Id.* (alterations in original) (internal quotations omitted).

To better illustrate the differences between when a statute is divisible or indivisible, consider the crime of burglary. Suppose a burglary statute requires (1) entering (2) a structure (3) with the intent to commit a felony therein. Thus, there are three things the prosecution must prove and, accordingly, three elements of this offense. Assume the statute further provides that entering includes, but is not limited to, entry by force, threat, or invitation. Entry by invitation is not an element of the offense. Rather, it is a means of satisfying the entry element. As such, the statute would be indivisible as to the entry element. Alternatively, consider a burglary statute prohibiting entry into a building or an automobile. *Descamps*, 570 U.S. at 261-62. Here, such a statute sets forth elements in the alternative; thus, two different ways of satisfying the same crime. *Id.* One may commit burglary through entry of a building or through entry of an automobile. *Id.* As such, the statute would be divisible as to the place that was entered. Thus, the objective of this inquiry is to determine whether the Legislature intended to create multiple, separate offenses or a single offense capable of being committed in several different ways.

*Interpretation of NRS 453.337*

Figueroa-Beltran argues that the identity of a controlled substance under NRS 453.337 is a means of committing the offense, rather than an element. Figueroa-Beltran suggests the State does not need to

SUPREME COURT
OF
NEVADA

(O) 1947A

prove beyond a reasonable doubt that a defendant possessed a particular controlled substance, just that he or she possessed a controlled substance. Under this view, some jurors could find the defendant possessed heroin, while others could find that he or she possessed cocaine; the jury does not have to unanimously agree on the *particular* identity of the controlled substance the defendant possessed, as long the jury unanimously agrees that the defendant possessed a controlled substance.

### NRS 453.337 is ambiguous

Whether a substance's identity is an element of this offense is a matter of statutory interpretation. "The goal of statutory interpretation is to give effect to the Legislature's intent." *Williams v. State, Dep't of Corr.*, 133 Nev. 594, 596, 402 P.3d 1260, 1262 (2017) (internal quotations omitted). "To ascertain the Legislature's intent, we look to the statute's plain language." *Id.* "[W]e avoid statutory interpretation that renders language meaningless or superfluous." *Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011). "If the statute's language is clear and unambiguous, we enforce the statute as written." *Id.* "Only when the statute is ambiguous, meaning that it is subject to more than one reasonable interpretation, do we look beyond the language [of the statute] to consider its meaning in light of its spirit, subject matter, and public policy." *Id.* (alteration in original) (internal quotations omitted); *see also State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011) (explaining that when a statute is ambiguous, this court may then look to legislative history and construe the statute in a manner consistent with reason and public policy). "Likewise, this court will interpret a rule or statute in harmony with other rules and statutes." *Clay v. Eighth Judicial Dist. Court*, 129 Nev. 445, 451, 305 P.3d 898, 902 (2013) (internal quotations omitted).

Applying these rules, we necessarily start with the statutory language. Under NRS 453.337(1), a possession-for-sale statute, "it is unlawful for a person to possess for the purpose of sale flunitrazepam, gamma-hydroxybutyrate, any substance for which flunitrazepam or gamma-hydroxybutyrate is an immediate precursor or any controlled substance classified in schedule I or II." Figueroa-Beltran argues the term "any" renders the statute ambiguous. We agree.

We have previously considered the term "any" in criminal statutes to assist us in determining the appropriate unit of prosecution. "Unit of prosecution," in the instant matter, would refer to how many counts of possession-for-sale under NRS 453.337 the State could charge a defendant when the defendant simultaneously possessed different controlled substances. Typically, the term "any" is considered ambiguous as it relates to unit of prosecution. *See Castaneda v. State*, 132 Nev. 434, 438, 373 P.3d 108, 111 (2016). "The word 'any' has multiple, conflicting definitions, including (1) one; (2) one, some, or all regardless of quantity; (3) great, unmeasured, or unlimited in amount; (4) one or more; and (5) all." *Id.* (internal quotations omitted). In *Castaneda*, we determined the unit of prosecution under a statute prohibiting the possession of child pornography photographs. *Id.* at 442-43, 373 P.3d at 113-14. There, we interpreted the term "any" to mean "a," such that simultaneous possession of multiple photos depicting child porn constituted a single offense. *Id.*

In contrast, this court in *Andrews v. State*, 134 Nev. 95, 99, 412 P.3d 37, 40 (2018), determined that the term "any" in Nevada's drug trafficking statute created a separate offense for each controlled substance possessed. *Andrews* addressed NRS 453.3385(1), which provides that it is unlawful to knowingly or intentionally sell or possess "*any* controlled

substance which is listed in schedule I."[3] (Emphasis added.) In construing the term "any," we looked to comparable statutes under NRS Chapter 453, Nevada's Uniform Controlled Substances Act (UCSA), to shed light on the proper unit of prosecution and determine whether the term "any" should be interpreted to mean a single controlled substance. *Andrews*, 134 Nev. at 99, 412 P.3d at 40. We acknowledged that most statutes establishing offenses under the UCSA refer to controlled substances in the singular, such as "the" controlled substance or "a" controlled substance. *Id.* Thus, we held that the term "any" in NRS 453.3385 creates a separate offense for each schedule I controlled substance simultaneously possessed. *See id.* at 99-100, 412 P.3d at 40-41.

As both *Castaneda* and *Andrews* have construed the same term "any" in different ways, we conclude that the term is ambiguous. Thus, "any controlled substance" as used by the Legislature in NRS 453.337 could mean, alternatively, "one controlled substance," "some controlled substances," or "all controlled substances" listed under schedule I or II, or under both schedules. "Any" may refer to a controlled substance in the singular, suggesting that the State may charge a defendant with one count of the offense for each controlled substance simultaneously possessed. This would suggest that substance identity is an element that must be proven for each count. Alternatively, "any" may refer to controlled substances in the plural, such that simultaneous possession of different substances only constitutes one count. This would suggest that substance identity is a means of committing the offense, rather than an element that must be

_____

[3]We note that the amended version of NRS 453.3385, which takes effect on July 1, 2020, adds language to include schedule II controlled substances and changes the statutory punishment scheme. This amendment, however, does not affect our analysis.

SUPREME COURT
OF
NEVADA

(O) 1947A

proven. Thus, because we conclude the term "any" in NRS 453.337 is subject to more than one reasonable interpretation, the provision is ambiguous.

*Caselaw indicates the substance's identity is an element of the crime described in NRS 453.337*

Since the statute's text does not establish whether the identity of a substance is an element of the offense or a means of committing the offense, "we turn to other legitimate tools of statutory interpretation, including related statutes, relevant legislative history, and prior judicial interpretations of related or comparable statutes by this or other courts." *Castaneda*, 132 Nev. at 439, 373 P.3d at 111.

NRS 453.337's legislative history sheds little light, directly or indirectly, on whether a substance's identity is an essential element of the offense. The State argues that because the Legislature based NRS 453.337 on California's possession-for-sale statute, we should follow California precedent interpreting its drug statutes as providing that drug identity is an element.[4] The California Supreme Court has consistently affirmed multiple convictions under a single drug statute for simultaneous

---

[4]In enacting NRS 453.337, the Legislature considered California's possession-for-sale statute, which at the time provided the following:

> [E]very person who possesses for sale (1) any controlled substance specified in subdivision (b) or (c) of Section 11054, specified in paragraph (11), (12), or (17) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055, or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug, shall be punished by imprisonment in the state prison for two, three, or four years.

Cal. Health & Safety Code § 11351 (1977); *see* 1976 Cal. Stat., ch. 1139, § 66, at 5079 (amending § 11351 effective July 1, 1977).

possession or transportation of different controlled substances. *See, e.g., Martinez-Lopez*, 864 F.3d at 1040-41 (citing to various California Supreme Court cases). These cases suggest that the California Supreme Court has interpreted its statutory drug scheme as providing that drug identity is an element. Nevertheless, because the Nevada Legislature in enacting NRS 453.337 did not adopt the identical provision codified at California Health & Safety Code § 11351, *see In re Application of Skaug*, 63 Nev. 101, 108, 164 P.2d 743, 746 (1945) (expressing the principle that when a state adopts the provisions of another state's statute, it not only adopts the text of that statute, it also adopts "the construction placed upon it by the highest court of the state from which it [was] adopted"), California precedent does not answer the question presented here. Thus, we look to persuasive caselaw to assist us in determining whether substance identity is an element of the crime described in NRS 453.337.

Our decision in *Muller v. Sheriff*, 93 Nev. 686, 687, 572 P.2d 1245, 1245 (1977), involved the unit of prosecution under NRS 453.321, which prohibits the sale of a controlled substance. The State charged Pierre Muller with one count of selling heroin (schedule I) and one count of selling cocaine (schedule II) after making a simultaneous sale of both controlled substances to an undercover narcotics agent. *Id.* at 686, 572 P.2d at 1245. Muller argued on appeal that since he sold both controlled substances at the same time and in the same transaction, his conduct did not constitute two separate offenses. *Id.* at 687, 572 P.2d at 1245. We disagreed and explained "the sale of each controlled substance 'requires proof of an

SUPREME COURT
OF
NEVADA

(O) 1947A

additional fact which the other does not,' viz., the particular . . . identity of the controlled substance sold."[5] *Id.* (internal quotations omitted).

As discussed above, and as is especially relevant here, in *Andrews*, we concluded that "any" in NRS 453.3385 created a separate offense for each schedule I controlled substance simultaneously possessed. NRS 453.3385(1)(a) makes it unlawful to knowingly or intentionally sell or possess "any controlled substance listed in schedule I" and imposes different penalties depending on the quantity of the controlled substance involved. NRS 453.3385(1)(a) punishes possession of over 4 grams but less than 14 grams of a schedule I controlled substance with 1-6 years in prison, while NRS 453.3385(1)(b) punishes possession of 14 grams but less than 28 grams of a schedule I controlled substance with 2-15 years in prison. Ryan Andrews possessed over 9 grams of heroin and over 9 grams of methamphetamine, both schedule I controlled substances. 134 Nev. at 95, 412 P.3d at 38. The State ultimately charged Andrews under NRS 453.3385(b) with possession of more than 14 grams of controlled substances after combining both substances' quantities. *Id.* at 96, 412 P.3d at 38. After concluding that the term "any" referenced "a" controlled substance, this court cited to NRS 453.013 for the proposition "that the UCSA should be interpreted so as to effectuate its general purpose and to make uniform the law with respect to the subject of such sections among those states which enact it." *Id.* at 99, 412 P.3d at 40 (emphasis omitted). This court then

---

[5]The version of NRS 453.321 in effect at the time Muller was charged provided in relevant part: "Except as authorized by the provisions of NRS 453.011 to 453.551, inclusive, it is unlawful for any person to sell, exchange, barter, supply or give away a controlled or counterfeit substance." 1973 Nev. Stat., ch. 673, § 17, at 1213. Though this statute has been amended several times since its enactment, these amendments do not impact the persuasive value of this case.

looked to NRS 453.3885's legislative history, which provides that the statute's purpose "was to curb the heavy trafficking of controlled substances." *Id.* at 100, 412 P.3d at 40. Thus, this court concluded a separate offense for the possession of each controlled substance furthered the legislative intent. *Id.* at 100, 412 P.3d at 41.

*Andrews* linked the unit of prosecution to the identity of the specific drug. Thus, *Andrews* indicates the identity of a substance is an element of the crime. *See, e.g., Vogel v. State*, 426 So. 2d 863, 880 (Ala. Crim. App. 1980) (explaining "that the necessity of a different showing of proof for each separate drug would support treating different drugs in separate counts of an indictment, and justify separate sentences"), *aff'd*, 426 So. 2d 882 (Ala. 1982); *Melby v. State*, 234 N.W.2d 634, 641 (Wis. 1975) ("[E]ach substance is different and the illegality of each must be determined independently . . . . [Thus] three different prohibited substances gives rise to three separate criminal charges . . . ."). As explained in *State v. Adams*, 364 A.2d 1237, 1240 (Del. Super. Ct. 1976), what must be proven for each unit of prosecution relates to the elements of the crime:

> Proof of the identity of the item possessed is an element of the offense . . . . Where possession of separate drugs is charged, while the evidence relating to possession may be the same for each charge, the evidence describing the substance and establishing its drug identity . . . would undoubtedly differ with respect to each drug charged. Hence, the totality of evidence required to prove one count would not establish all of the elements required with respect to the other counts.

Thus, we conclude our decisions in *Muller* and *Andrews* indicate that the particular identity of a substance is an element that must be proven to sustain a conviction under NRS 453.337.[6]

NRS 453.570 also points toward substance identity being an element of NRS 453.337 because it requires that the type of drug be proven at trial. NRS 453.570 provides that "[t]he amount of a controlled substance needed to sustain a conviction of a person for an offense prohibited by the provisions of NRS 453.011 to 453.552 . . . is that amount necessary for identification as a controlled substance by a witness qualified to make such identification." Because a witness must positively identify a substance as a specific controlled substance, a substance's identity is necessarily an element of the crime described in NRS 453.337. *See Hamilton v. State*, 94 Nev. 535, 536, 582 P.2d 376, 377 (1978) (holding there was sufficient evidence to support conviction under NRS 453.321 for the sale of heroin where "[a]n expert witness identified the substance in the balloon as heroin"); *Bolden v. Sheriff*, 93 Nev. 8, 9, 558 P.2d 628, 628 (1977) (stating "[p]roof beyond a reasonable doubt that the substance sold was in fact contraband must be offered at trial").

Further, the identity of a substance determines the applicable schedule of controlled substances, which may determine the applicable punishment. Controlled substances are classified according to their

---

[6]Figueroa-Beltran argues this court's decision in *Sheriff v. Luqman*, 101 Nev. 149, 697 P.2d 107 (1985), is inconsistent with our conclusion here. At issue in *Luqman* was whether the Legislature had unconstitutionally delegated its authority to the State Board of Pharmacy when it directed the "[B]oard to classify drugs into various schedules according to the drug's propensity for harm and abuse." *Id.* at 153, 697 P.2d at 110. Because *Luqman* applied to a special circumstance involving legislative delegation of power, we conclude the *Luqman* court's reasoning for why there was no unconstitutional delegation of authority does not apply here.

potential for abuse, medical use, and potential dependence. *See* NRS 453.166; NRS 453.176; NRS 453.186; NRS 453.196; NRS 453.206. For example, the State Board of Pharmacy places substances in schedule I if the substance "[h]as high potential for abuse" and "no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision." NRS 453.166. Alternatively, the Board places a substance in schedule II if the substance "has high potential for abuse," "has accepted medical use in treatment in the United States, or accepted medical use with severe restrictions," and "abuse of the substance may lead to severe psychological or physical dependence." NRS 453.176. NRS 453.337 outlines the applicable sentences for a violation of the statute, unless the greater penalties described in NRS 453.3385 (dealing with flunitrazepam; gamma-hydroxybutyrate; precursors to flunitrazepam or gamma-hydroxybutyrate; and schedule I controlled substances, except marijuana), NRS 453.339 (dealing with marijuana and concentrated cannabis), or NRS 453.3395 (dealing with schedule II controlled substances) apply.

Accordingly, even though the use of the term "any" in NRS 453.337 is ambiguous, *Muller* and *Andrews* demonstrate that the identity of a substance is an element that must be proven to sustain a conviction under NRS 453.337. We find further support for the idea that a substance's identity is an element of the crime in the requirement that the State must be able to establish the identity of the drug and because the drug's identity may impact the applicable sentence. Based on the foregoing, we conclude that the identity of a substance is an element that must be proven to sustain a conviction under NRS 453.337, rather than a means of committing the offense.

## CONCLUSION

The Ninth Circuit certified three questions to this court, which we have reframed into one question: Is the identity of a controlled substance an element of the crime articulated in NRS 453.337? We hold that the identity of a substance is an element of the crime set forth in NRS 453.337.

_____, J.
Gibbons

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A

STIGLICH, J., with whom PICKERING, C.J., agrees, dissenting:

As framed by this court, the question to be answered is whether the identity of a substance is an element of the unlawful-possession-for-sale crime identified in NRS 453.337. Because I believe the answer is clear from the plain language of the statute, and because the caselaw and statutes relied upon by the majority are unpersuasive or distinguishable, I respectfully dissent.

In relevant part, NRS 453.337 lists three elements necessary to convict a defendant: (1) "possess[ion]," (2) "for the purpose of sale," (3) of "any controlled substance classified in schedule I or II."[1] From the plain language, the controlled substance's identity is not an element. There is no reference to, or identification of, a particular substance in this language. The identity of the specific type of substance is merely a means of satisfying the "any controlled substance classified in schedule I or II" element. Consider the hypothetical referenced by the majority and discussed in *Mathis v. United States*, ___ U.S. ___, ___, 136 S. Ct. 2243, 2249 (2016): the use-of-a-deadly-weapon element may be satisfied by different means—a knife, gun, bat, or similar weapon. The list of means merely specifies ways of satisfying the element; each method does not constitute an element. *Id.* To further prove the point, if one of those means were removed, such as the

_____

[1]The statute lists three other substances—(a) flunitrazepam, (b) gamma-hydroxybutyrate, and (c) any substance for which (a) and (b) is an immediate precursor. These substances do not appear to be at issue in Figueroa-Beltran's matter and do not appear to be of concern to the federal court's questions. *See United States v. Figueroa-Beltran*, 892 F.3d 997, 1000 (9th Cir. 2018) (identifying the issue as whether NRS 453.337, "which criminalizes conduct related to certain controlled substances identified by reference to the Nevada Administrative Code, is divisible under federal law").

bat, the element of the offense (use of a deadly weapon) would remain the same. There would be merely one less method of satisfying the element. Similarly, if a particular controlled substance were removed from schedule I or II, NRS 453.337 would not change. The elements, as listed above, would remain the same. There would be simply one less means of satisfying the "any controlled substance classified in schedule I or II" element. Thus, the identity of the substance does not constitute an element.

While I believe the plain language of NRS 453.337 answers the question posed, I address the majority's reliance on our unit-of-prosecution caselaw. First, reliance on *Muller v. Sheriff*, 93 Nev. 686, 572 P.2d 1245 (1977), is misguided because of the different statutory scheme in effect at the time. *Muller* addressed the unit of prosecution for since-repealed drug statutes where the "drugs which were deemed to constitute controlled substances were specifically set out by statute." *Sheriff v. Luqman*, 101 Nev. 149, 152, 697 P.2d 107, 109 (1985). At the time of Muller's conviction in the 1970s, heroin and cocaine were specifically listed in separate statutes—NRS 453.161 and NRS 453.171—and Muller was *necessarily* charged under these separate statutes with one count of selling heroin (a schedule I controlled substance) and one count of selling cocaine (a schedule II controlled substance). *Muller*, 93 Nev. at 686, 572 P.2d at 1245. Because heroin and cocaine were identified under separate statutes, the *Muller* court correctly noted that the sale of each required proof of a fact that the other did not—the identity of a substance set out in NRS 453.161 or NRS 453.171.

Today, on the other hand, our statutes do not specifically identify all controlled substances; rather, the State Board of Pharmacy determines our scheduled substances in schedules found within our administrative code. *See* NRS 453.166; NRS 453.176; NAC 453.510-

SUPREME COURT
OF
NEVADA

(O) 1947A

453.550. The Legislature's decision to remove the identity of scheduled substances from our statutes indicates a change in law since the time *Muller* was decided. *See McKay v. Bd. of Sup'rs of Carson City*, 102 Nev. 644, 650, 730 P.2d 438, 442 (1986) ("It is ordinarily presumed that the legislature, by deleting an express portion of a law, intended a substantial change in the law."). Further, by deleting the list of scheduled substances from the statutes, the Legislature removed any indication in the statutes that the specific identity of a scheduled substance constitutes an integral part of the crime. We recognized as much in *Sheriff v. Luqman*, 101 Nev. at 153-54, 697 P.2d at 110, where we reasoned that the Legislature delegated to the State Board of Pharmacy the power to determine the *facts*—not elements—of our drug statutes when delegating the power to schedule substances. That the identity of a scheduled substance is a fact our drug laws depend upon to operate does not dictate the conclusion that the identity of a scheduled substance is an element:

> [T]he power to define what conduct constitutes a crime lies exclusively within the power and authority of the legislature. . . . [But the legislature] may delegate the power to determine the facts or state of things upon which the law makes its own operations depend. Thus, the legislature can make the application or operation of a statute complete within itself dependent upon the existence of certain facts or conditions, the ascertainment of which is left to the administrative agency.

*Id.* at 153, 697 P.2d at 110 (citations omitted).

Second, as I remain steadfast in my dissent from its outcome, I disagree with the majority's reliance on *Andrews v. State*, 134 Nev. 95, 412 P.3d 37 (2018). In *Andrews*, I argued that NRS 453.3385 does not distinguish between the different substances classified in schedule I for

purposes of trafficking charges, so neither should this court. *See id.* at 102-03, 412 P.3d at 42-43 (Stiglich, J., dissenting). Likewise, NRS 453.337 does not distinguish between the different substances classified in schedule I or II. Therefore, the identity of a specific substance should not be treated as an element of the statute, creating separate crimes for each identified substance, where the statute does not formulate such a distinction. This conclusion is in accord with other states that have interpreted the possession of multiple controlled substances—criminalized by a single statute—as a single offense, thereby implying that the identity of a substance is not an element of the crime. *See Duncan v. State*, 412 N.E.2d 770, 775-76 (Ind. 1980); *State v. Butler*, 271 A.2d 17, 17-18 (N.J. App. Div. 1970); *State v. Homer*, 538 P.2d 945, 946 (Or. Ct. App. 1975). By recognizing the identity of a substance as an element of NRS 453.337, the majority recognizes a distinction not contemplated by the Legislature.

Additionally, I find the majority's reliance on NRS 453.570 unpersuasive. It is worth noting that NRS 453.570 does not contain a requirement that the witness specifically identify the controlled substance involved. But to the extent NRS 453.570 can be assigned persuasive influence, I cannot place such an emphasis on NRS 453.570's language so as to overcome the plain language of NRS 453.337. And insofar as any significance can be given to the determination of an applicable punishment when answering the question presented to this court, I disagree with the notion that it is the identity of a substance that controls. It is clear that the statute assigns punishment based on schedules, NRS 453.337, and in some circumstances weight, NRS 453.3383. The majority recognizes "the identity of a substance determines *the applicable schedule of controlled substances, which may determine the applicable punishment.*" Majority op., *supra*, at

SUPREME COURT
OF
NEVADA

(O) 1947A

4

15 (emphasis added). Thus, it is not the identity of the substance but the scheduling (or weight) that determines punishment.

As the plain language of NRS 453.337 does not include the identity of a controlled substance, such identity is not an element of the crime. I therefore dissent.

_____, J.
Stiglich

I concur:

_____, C.J.
Pickering